FITZPATRICK vs. The Estate of MARTIN PHELAN, Deceased.

*September 7 — September 25, 1883.*

*(1) Claim against decedent: instructions to jury. (2) Limitation of actions: "mutual account." (3) Reversal of judgment.*

1. The presentation of a claim against a decedent for care, attendance, etc., is inconsistent with the theory on behalf of the claimant that a portion of the care, attendance, etc., charged therein was furnished as repayment of money advanced by the decedent; and suggestions and instructions given upon that theory on a trial of the issue made upon an objection to such claim, are held to have been misleading.

2. Where the items in an account are all charged against one party and in favor of the other it is not a *mutual* account, and all claim upon that portion thereof which accrued more than six years

prior to the commencement of an action thereon is barred by the statute of limitations.

8. Where that part of an account which was barred by the statute was not withdrawn from the consideration of the jury, and it does not appear that they did not include the same in their verdict, the judgment will be reversed, even though the verdict does not exceed in amount that portion of the account which was not so barred.

APPEAL from the Circuit Court for *Iowa* County.

Martin Phelan died December 10, 1880. He had boarded and roomed in the house with the respondent from 1869 to the fall of 1875, and then from some time in May, 1877, to the time of his death, except temporary absences. On September 15, 1870, a farm of sixty-seven acres was sold on foreclosure sale against the respondent, and bid in by Phelan for $471, which he then paid. It is claimed by the respondent that Phelan bid in the land with the understanding and agreement that he would reconvey to her upon repayment of the $471 and interest; and it is undisputed that she remained in the occupancy, and continued to receive the rents, issues, and profits of the land, up to and since the time of Phelan's death.

The respondent presented to the county court a verified claim against the estate, which may be summarized as follows:

| | |
|---|---:|
| For care and attendance as nurse to the deceased from Jan. 1, 1870, to Dec. 31, 1878 | $726 00 |
| For care and attendance as nurse from Jan. 1, 1879, to Dec. 10, 1880 | 434 00 |
| Board, lodging, and room from May 20, 1877, to Dec. 10, 1880 | 783 00 |
| Farm and other labor | 44 25 |
| Board and keeping friends of deceased at funeral | 60 00 |
| Total claim | $2,047 25 |
| Credit by cash, Aug. 12, 1880 | 20 00 |
| Balance due | $2,027 25 |

The administrator, by his verified answer, objected to each and every item of the claim, refused to pay any portion of it,

denied any indebtedness, and alleged that all the items of the account prior to December, 1874, were barred by the statute of limitations. The claim was allowed by the county court at the sum of $1,613.50, and from the judgment of allowance the administrator appealed.

In the circuit court the administrator was permitted to amend his answer, and, in addition to the matters before stated, alleged that the claim had been fully paid by Phelan in his life-time; and also, by way of setoff and counterclaim, set out a note for $300, dated March 18, 1878, given by the respondent, and by one Shea as security, to Phelan. It appeared that the respondent had borrowed $300 of one Edward Aide, and to secure payment thereof had given her note, signed by Shea and Phelan as sureties; that when such note became due it was paid for the respondent by Phelan, and that the respondent, on account of such payment, gave to Phelan the note mentioned in the answer.

The instructions to the jury are sufficiently stated in the opinion. There was a verdict for the respondent, assessing her damages at $600 over and above the note to Phelan. A motion to set aside the verdict and for a new trial was denied, and from the judgment entered on the verdict the administrator appealed.

For the appellant there was a brief by *J. M. Smith* and *P. A. Orton*, and oral argument by *Mr. Orton*.

For the respondent there were briefs signed by *Reese, Jenks, Smelker & Grace*, and the cause was argued orally by *Mr. Smelker* and *Mr. Jenks*.

CASSODAY, J. In pursuance of a request from the administrator, the court read, in the presence of the jury, an instruction to the effect that the note was *prima facie* evidence that all previous indebtedness from the deceased to the respondent had at that time been paid, and then added: "The court declines giving the instruction (in unqualified terms),

for the reason that if the jury believe from the testimony that the claimant, *Mrs. Fitzpatrick*, was indebted to Martin Phelan for money advanced to purchase her farm, away back in 1871, and feel themselves warranted in believing that she was saving up her claim for services and board against Martin to discharge that obligation, it accounts for her borrowing money of Aide, instead of exacting pay from Martin for her services and board. If the jury are satisfied that this was true, it answers or does away with the presumption arising from permitting Martin to pay her note, that all previous demands by her against him had been paid. The general principle embodied in the instruction asked for is correct. But, if a valid reason is shown from the testimony for giving a promissory note to one who is already a creditor, rebutting the presumption of previous settlement, it removes the *prima facie* evidence arising from giving the note on an accounting and settlement of all demands between the parties." These instructions were each excepted to, and we are clearly of the opinion that they were inapplicable to the issue on trial, and tended to mislead the jury.

The same erroneous theory seems to have actuated the court from the commencement to the close of the trial. Thus, when objection was made to evidence because it was precluded by the statute of limitations, the court interposed by saying: "Suppose he [Phelan] advanced a certain amount of money in 1870, he commenced living with her, and whatever he had for his support was to apply on it right along." Again, the sheriff's deed to Phelan of the sixty-seven acres of land which had been bid in by him on foreclosure sale against her for $471, was admitted in evidence, against objection, on the ground that it was "the means by which *Mrs. Fitzpatrick* became his debtor." The court went still further, and allowed the respondent to prove, against objection, that Phelan had bid in the land for her, and that she was to have the land back on repayment of the money.

The error of the court becomes manifest when it is remembered that this is not an action against Phelan, his heirs or devisees, for specific performance of the suggested contract to reconvey the land bid off on foreclosure sale on repayment of the money, but a simple claim against the estate. If this were such action for specific performance, and the respondent was endeavoring to show that the money paid by Phelan on the purchase had been repaid by way of care, attendance, board, lodging, room, etc., then there might have been·some plausibility in the suggestion of the learned trial judge; but upon the issue being tried it had no application, and tended directly to mislead the jury. The very fact that the respondent presented a simple claim against the estate for the care, attendance, board, etc., is wholly inconsistent with the theory that such care and attendance had been rendered, and such board, etc., furnished, as repayment of the money advanced by Phelan. In case such care and attendance were so rendered, and such board, etc., so furnished, as repayment of the money so advanced, then to that extent they could not be recovered as a simple claim against the estate; and in case they are allowed as a simple claim against the estate, then it must be on the theory that no part of them was ever so rendered or furnished as repayment of the money so advanced, and hence the evidence admitted was immaterial to the issue tried, and the suggestions made by the court were inapplicable, and directly tended to mislead the jury.

We are also of the opinion that the claim here made is not " to recover the balance due upon a mutual and open account current," within the meaning of sec. 4226, R. S. The account upon which the claim is based does not " show a system of mutual dealings and of reciprocal demands between the parties," as in *Hannan v. Engelmann*, 49 Wis., 282. Where the items in the account are all charged against the one party and in favor of the other, as here, it is not a

mutual account. It lacks the very element essential to make it such — mutuality. Angell on Lim., §§ 148-9. The claim presented, not being a mutual account, does not come within "the rule that items within six years draw after them other items beyond that period," for that rule is "strictly confined to mutual accounts." Ibid. See, also, *Butler v. Kirby*, 53 Wis., 188, and cases there cited. It follows that so much of the account as accrued prior to December, 1874, was barred by the third subdivision of sec. 4222, R. S. It is urged that that portion of the account which accrued subsequent to that date was sufficiently large to cover the verdict. But, for aught that appears, the jury may have included in their verdict a portion or even the whole of what was barred by the statute. It was error, therefore, to submit that portion of the account to the jury.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.