*In re* VEDDERS' ESTATE.

1. WILLS—EXECUTOR AS RESIDUARY LEGATEE—STATUTORY BOND —PAYMENT OF DEBTS—PREFERENCES.

> Though an executor, as the residuary legatee in the will, may give, in lieu of the ordinary bond, a bond conditioned only to pay the debts and legacies, under 3 Comp. Laws 1897, § 9312, his right of disposition of the property is subject to the authority of the probate court to compel the application of the property to the payment, ratably, of the decedent's debts, in case the executor fails to provide for them from other sources; therefore it is improper, where there is a deficiency of assets, for such an executor to mortgage the property, or to apply the proceeds of a sale thereof, in such manner as to work preferences among the creditors.

2. SAME—LICENSE TO MORTGAGE—VARIANCE.

> Where it appeared on petition for confirmation of a mortgage given to a creditor of the estate by an executrix who was a residuary legatee, and had given bonds as such under 3 Comp. Laws 1897, § 9312, that, while the license to mortgage granted by the probate judge provided that the mortgage should be for a stated amount and be subject to all existing incumbrances, the land being already mortgaged by the executrix to another creditor, the mortgage as drawn was for a greater amount and omitted the provision as to incumbrances, the probate court properly held the variance material and refused to confirm the mortgage.

*Certiorari* to Kent; Grove, J.    Submitted November 14, 1899.    Decided December 21, 1899.

In the matter of the appeal of the Kent County Savings Bank from an order of the probate court denying a petition for the confirmation of a mortgage executed by Hettie Vedders, as executrix of the last will and testament of Herman A. Vedders, deceased. From an order of confirmation, the executrix brings *certiorari*.    Reversed.

*J. C. Post* ( *Wanty & Knappen*, of counsel ), for appellant.

*T. J. O'Brien* and *James H. Campbell*, for appellee.

HOOKER, J.   Hettie Vedders was appointed executrix of her husband's estate, and filed a residuary legatee's bond, under the statute (3 Comp. Laws 1897, § 9312), in the sum of $5,000, on May 16, 1893.   She took possession of the property, which consisted of real estate and personal property.   She filed no inventory.   Commissioners were appointed, who allowed claims to an amount exceeding $18,000, and the executrix paid many of these, exhausting the personal property of the estate in so doing. She also carried out several contracts made by the testator relative to the sale of land.   This was in obedience to orders made by the probate court.   The following claims were not paid:

| | |
|---|---:|
| Kent County Savings Bank | $3,247 89 |
| James Vandersluis | 1,632 21 |
| Robinson estate | 4,121 32 |

Upon the 15th day of April, 1895, Mrs. Vedders filed, in the probate court, a petition for a license to mortgage the lands of the estate, alleging that all of the personal property had been used in the payment of debts, that the unsecured claims allowed amounted to about $5,500, besides contingent claims to the amount of $1,800.   The prayer was that she might be licensed to mortgage the lands of the estate for the payment of the outstanding claims, and to secure to the Kent County Savings Bank the payment of the contingent claims.   The court granted the license upon the 13th day of May, 1895, and the usual bond was filed.   The mortgage was made of the date of August 24, 1895, to the Kent County Savings Bank, for $5,537.72.   It did not conform to the provisions of the license.   The license authorized a mortgage for $5,500; the mortgage was for $5,537.72.   The license required interest payable annually; the mortgage provided for inter-

est payable semi-annually.   The license required the mort-
gage to be for the term of three years from the date of the
order, which was May 13, 1895; the mortgage was exe-
cuted August 24, 1895, and ran three years from that
date.   The license required that it be made subject to all
incumbrances, by way of mortgage or otherwise, existing
at the time, to dower and homestead rights; this was
omitted from the mortgage.   The license required an im-
mediate report after the execution and before the delivery
of the mortgage.   The mortgage was recorded August 26,
1895.   It contained a provision that it should not be de-
livered, or become operative, until all of the proceedings
under the license should be fully reported to said court,
and be, by an order thereof, duly confirmed.   The peti-
tion for *certiorari* states that the business of procuring
the license, including the drafting and execution of the
mortgage, was done by the attorneys for the bank, whose
advice Mrs. Vedders accepted, and that no delivery of the
mortgage was ever made as provided by the last clause.
No report was made, or order of confirmation sought,
until November 25, 1898, when she executed and filed a
petition for an order of confirmation.   She now denies
that the last-mentioned petition was her petition, and
alleges that it was prepared by the attorneys for the bank,
who sent it to her for execution by the notary, who came
to her with said petition, showed her a paper, and told her
it was a report to the probate court of what she had done
in the estate; that she did not know the contents, but was
afterwards informed of its nature; that it had been filed,
and an order for hearing made for the 23d of December.
On December 20, 1898, she filed a petition in said court
praying leave to withdraw the petition for confirmation,
and that no hearing be had upon it.   On January 28,
1899, the bank filed its petition for a confirmation of its
mortgage, alleging the proceedings, and stating further
that, at the time it took the mortgage, it advanced to the
executrix $1,200, to pay the Vandersluis claim, which was
then paid, and that the remainder of the consideration of

the mortgage was the balance due upon its claims. It alleged that it was informed and believed that all other claims against the estate had been fully paid or satisfied, and that there remained only the sum of $5,537.72. It objected to the withdrawal of the first petition, and prayed that a hearing be had, and order made thereon, and that the petition for withdrawal be canceled. It asked that an order of confirmation be made *nunc pro tunc* as of August 24, 1895. A hearing was had in probate court, and confirmation was denied. Upon appeal this order was reversed, and an order of confirmation was made. The case is before us on *certiorari*, brought by Mrs. Vedders.

At the hearing in the circuit court the testimony showed that on October 1, 1894, the claim of the Robinson estate was secured upon a part of the real estate by a mortgage given by Mrs. Vedders for $2,783.67, and that mortgage was, at the time of the hearing, in process of foreclosure, Mrs. Vedders having permitted an order *pro confesso* to be entered. This appears to be undisputed. Counsel for the executrix contend that, by giving the residuary legatee's bond provided by the statute, she became vested with the title to the property, and liable personally for the debts; that the remedy of the creditors against the property of the estate was changed to one against the legatee, and that only, the payment of the claims being secured by the bond; or that, at all events, the estate is closed, and the probate jurisdiction is ended. If this were correct, it would follow that it would be beyond the power of the probate court to interfere with the property by ordering a sale, and the executrix might lawfully sell, mortgage, or otherwise dispose of the property. But it has been decided otherwise in the case of *Lafferty* v. *People's Savings Bank*, 76 Mich. 35, as counsel admit. We are asked to overrule that case, but we are of the opinion that it should not be done. That case indicates that a residuary legatee, by giving the bond referred to, is no less an executor than as though he had given the

usual executor's bond. The right upon his part to have claims passed upon by commissioners within a limited time, and the right of creditors to present claims to such a tribunal or the probate judge, is the same as in other cases. The lien of the creditors upon the property is the same, and the probate court has authority to compel its application to the payment of debts, if the executor does not' provide for them from other sources. It may require a report, when necessary, and may make or refuse an order closing the estate.

The statute relieves such an executor from filing an inventory, and it is said in the *Lafferty Case* that, "as a consequence," he may sell both personal and real property without a license. If this be true, and a sale is fraudulent, the grantee in possession must yield to the creditor's lien, as in the *Lafferty Case*. Although an executor may sell property at will, it is none the less his duty to use the moneys received to pay all of the creditors, and not one or more to the exclusion of others. One who is a *bona fide* purchaser may presume that the money paid for the land will be used by the executor in a proper manner. Perhaps the same may be said of a mortgagee who loans money, if the law gives such executor the right to mortgage without the usual license. But what shall be said of a mortgagee who takes a mortgage upon the property, or a part of it, to secure his debt, thereby becoming a preferred creditor, to the possible or probable exclusion of other creditors? Is it not the duty of the executor to pay the debts ratably, if there is a deficiency of assets? and, should the bond — which the *Lafferty Case* holds to be cumulative security — be inadequate, would not the creditors be entitled to a similar distribution of the proceeds of such bond? Would not a creditor who should be fully paid be required to contribute to another for whom there was nothing, by reason of inadequacy of the fund and insufficiency of the bond? and would the latter be compelled to assume the expense and responsibility of compelling a proper distribution in another court before

he could ask it? The law should not put a premium upon obtaining such preferences.

The impression may have, and probably has, prevailed that a residuary legatee might, by being appointed executor, and upon giving the proper bond, make such disposition of lands as he should choose to make, and pay debts when and as he should prefer. This would be a natural inference from a line of cases cited in *Lafferty* v. *People's Savings Bank*. That case, however, by enforcing the creditor's lien, and determining that the bond is a cumulative security, implies that the proceeds of the property should be applied to the debts ratably, and it would seem to follow that no creditor should be preferred, either by payment from the property or its proceeds or by mortgage upon it. See, also, *Blackmore* v. *Kent Probate Judge*, 95 Mich. 448.

The briefs, as well as the record, indicate that there is a contest between the holders of the respective mortgages for priority. If the Robinson executors could be assured that their mortgage would be held valid, and a prior lien in favor of the Robinson estate, there would probably be no contest here; but this may, from their standpoint, be reasonably in doubt, and we have indicated an opinion that it is not such lien. On the other hand, the Kent County Savings Bank claim should not be preferred through the mortgage given to it. We cannot assume that it was the intention of the probate judge to prefer a claim. On the contrary, his order indicates that he did not so intend, because he required the mortgage to be made subject to all existing mortgages and incumbrances, which mortgage, so drawn, would, when accepted, estop the mortgagee from questioning the priority of the Robinson mortgage. The Kent County Savings Bank did not take such a mortgage, but one which appears to leave it at liberty to question the validity of the Robinson mortgage. This is a material variance from the order, and justified the probate court in his refusal to confirm the mortgage.

It is unnecessary to discuss other questions. The order of the circuit court is reversed, and that of the probate court affirmed, with costs of all courts.

The other Justices concurred.