Pym, Appellant, vs. Pym, Respondent.

*March 25—September 8, 1903.*

*Estates of decedents: Residuary legatee as executor: Bond to pay debts: Liability of estate: Homesteads: Evidence: Declarations of deceased persons: Limitations of actions.*

1. Where a residuary legatee, who is also the executrix, gives the bond provided by sec. 3795, Stats. 1898, conditioned "to pay all the debts and legacies of the testator," the giving of such bond does not have the effect to pass to the executrix and residuary legatee the absolute title to the whole estate, terminate the administration, and limit the remedy of general creditors of testator to proceedings upon the bond against the legatee personally. *Will of Ebenezer W. Cole*, 52 Wis. 591, so far as it announces a contrary doctrine, overruled.

2. In such case, all the property, not exempt, of which the testator died seized is subject to the payment of his debts, whether the executor gives the bond required by said sec. 3795 or the bond ordinarily required by law.

3. Under sec. 2983, Stats. 1898 (providing that a debtor's homestead, not exceeding one-fourth acre, shall be exempt), and sec. 3682 (providing that if a testator makes provision by his will for the payment of his debts, then they shall be paid accordingly, but that no general direction in any will to pay the debts of the testator out of his property shall subject the homestead to the payment thereof), the provision of a will giving to testator's widow all of his real and personal estate "which should remain after the payment of" his "just debts and funeral expenses," only charges with the payment of testator's debts such real estate as is in excess of the one-fourth acre, owned and occupied by deceased and his wife as his homestead at the time of his death.

4. In an action by a testator's son against testator's widow (who as residuary legatee and executrix had given a bond to pay debts and legacies), to recover an alleged indebtedness of the decedent to plaintiff, self-serving declarations of the testator, made to his wife, are inadmissible.

5. Such declarations would be also inadmissible, even had the plaintiff opened the door for the widow to testify generally as to communications with her deceased husband.

6. In an action by a testator's son against the widow (who as residuary legatee and executrix had given bond to pay debts

and legacies), to recover money alleged to have been advanced to his father in his life time, the fact that prior to his death testator had sued plaintiff to recover back funds alleged to have been converted by plaintiff, which suit was compromised and discontinued without costs to either party, is admissible in evidence, but fails to show conclusively testator's claim relative to such funds, or that plaintiff acquiesced in such claim.

7. Where the residuary legatee and executrix gave bond to pay debts and legacies under the provisions of sec. 3795, Stats. 1898, and thereby became personally liable to pay testator's debts, a cause of action against the testator, on which suit was brought against the residuary legatee, is not barred by the statute of limitations until six years after the giving of such bond.

APPEAL from a judgment of the circuit court for Brown county: S. D. HASTINGS, JR., Circuit Judge. *Reversed.*

This action was commenced May 15, 1900, to recover $524.16, alleged to have been loaned and advanced to the defendant's testate, William Pym, who died March 21, 1894. The complaint alleges, in effect, that William Pym became indebted to the plaintiff on an account for moneys loaned and advanced to him during his lifetime, upon his request, to the amount stated, upon the express understanding and agreement that if, for any reason, said William Pym was unable to repay the several sums so advanced, he would devise and bequeath his two lots therein described to the plaintiff as payment therefor; that the money was demanded of William Pym and the defendant, but was never repaid; that William Pym died March 21, 1894, without devising said lots to the plaintiff; that he left a will, in which he named the defendant as executrix and residuary legatee, and by the will he devised all of his property to the defendant, subject to the payment of his debts, funeral expenses, and bequests; that May 3, 1894, the defendant gave the usual statutory bond as such executrix and residuary legatee, as required by sec. 3795, Stats. 1898, and all the property of the deceased was assigned to her by the county court; that the real estate so assigned consisted of

the two lots described; that the defendant has no other property than the two lots mentioned. Wherefore the plaintiff prayed judgment for the sum stated, together with costs, and that the judgment be declared a lien upon the lots mentioned. The answer consists of admissions, denials, and counter allegations to the effect that the lots and the building thereon constituted the homestead of William Pym and the defendant, and have been actually selected and occupied and claimed by her as such ever since the will took effect May 2, 1894, and that during all of that time the defendant has resided thereon, and still resides thereon; that, if the plaintiff loaned and advanced moneys to William Pym, the same were taken out of the moneys and property which belonged to William Pym or his estate. And for a separate defense the answer alleges that the rights of the plaintiff, if any, have been barred by the statutes of limitation. At the close of the trial the court made findings of fact to the effect that the plaintiff was the son of William Pym, and the defendant was the wife of William Pym; that William Pym died, and left a will dated January 15, 1891, and which was admitted to probate May 1, 1894, as stated, in which he left $1 to the plaintiff, $1 to another son, and made the defendant sole executrix, legatee, and devisee; that the whole estate was assigned to the defendant upon her giving a bond of $100 to pay debts and legacies, which she gave; that the items of money mentioned in the complaint were paid by the plaintiff out of the moneys and property which belonged to William Pym or his estate, and made at or about the times mentioned in the complaint; that the plaintiff has not proven that he had a valid claim against William Pym at the time of his decease, or against his estate at any time. And as conclusions of law the court found, in effect, that the plaintiff's complaint must be dismissed, and that the defendant is entitled to judgment dismissing the complaint, and for her costs and expenses in the action, and ordered

judgment to be entered accordingly. From the judgment so entered the plaintiff brings this appeal.

For the appellant there was a brief by *Sheridan & Evans,* and oral argument by *Phil. Sheridan.*

For the respondent there was a brief by *Ellis, Merrill & Silverwood,* and oral argument by *T. P. Silverwood.*

CASSODAY, C. J. At the commencement of the trial the defendant objected to any evidence under the complaint, because it did not appear therefrom that the plaintiff had not a full and complete remedy by proceedings in the county court, and hence that a court of equity should decline to take jurisdiction. This objection was manifestly based upon the rulings of this court in *Meyer v. Garthwaite,* 92 Wis. 571, 573, 576, 66 N. W. 704; *Burnham v. Norton,* 100 Wis. 8, 13, 75 N. W. 304; *Hill v. True,* 104 Wis. 294, 301, 80 N. W. 462; *Ludington v. Patton,* 111 Wis. 208, 249, 86 N. W. 571. The complaint alleges, and the proofs show, that the defendant, as executrix and residuary legatee, had given the bond required by sec. 3795, Stats. 1898, conditioned "to pay all the debts and legacies of the testator." This being so, the trial court held, in pursuance of a decision of this court, that the effect of giving such bond was to pass to the defendant "the absolute title to the whole estate, and to terminate the administration," and that "claims against the estate became, by the execution of the bond, claims against such sole legatee, and the remedy of general creditors of the estate was thereafter upon the bond or against the legatee, and not against the estate." *Will of Ebenezer W. Cole,* 52 Wis. 591, 592, 9 N. W. 664. And see *Meyer v. Garthwaite,* 92 Wis. 575, 66 N. W. 704. In the first of these cases it is said that such "is the doctrine of the Massachusetts cases" arising under a statute like ours; citing *Thompson v. Brown,* 16 Mass. 172; *Clarke v. Tufts,* 5 Pick. 337. Neither of those cases goes to

the extent stated.    Thus, in a recent case in that state it is
held:

"It is no defénse to an action under the" statute "against.
an administrator *de bonis non* with the will annexed that the
original executor, who was also the residuary legatee, gave a
bond to pay debts and legacies."    *Collins v. Collins*, 140
Mass. 502, 5 N. E. 632.

It is there said by the court:

"It is true that the bond made the executrix personally lia-
ble upon it to the extent of its penalty, but that is not suffi-
cient to exonerate the estate, unless the statutes provide that
it shall have that effect.    We find no such provision.    .    .    .
The purpose of the section was to confirm the doctrine of
*Gore v. Brazier*, 3 Mass. 523, 543, to the effect that 'the lien
on the testator's estate, real or personal,    .    .    .    remains in
full force, and the benefit to be derived by a creditor or lega-
tee from the bond is merely cumulative.' "    Page 505, 140
Mass., and page 633, 5 N. E.

And then, after citing *Thompson v. Brown* and *Clarke v.
Tufts, supra,* to the exception therein mentioned, it is said:

"But this exception is shown to be consistent with the prin-
ciple quoted from *Gore v. Brazier* by the fact that it also is
adopted by the statute.    And that principle is so fully recog-
nized by the later decisions that it is only necessary to cite
them."    Citing numerous cases.    Page 506, 140 Mass., and
page 633, 5 N. E.    To the same effect: *Jenkins v. Wood*, 144
Mass. 238, 10 N. E. 818.

So it has been held in Michigan:

"The statutes declaring that all of a testator's property
shall be chargeable with the payment of all of his debts create
an equitable lien in favor of creditors, which is not destroyed
by the execution of the statutory bond by a residuary legatee,.
which becomes an additional security for such payment."
*Lafferty v. People's S. Bank,* 76 Mich. 35, 43 N. W. 34.    See,.
also, *Blackmore v. Perkins,* 95 Mich. 446, 54 N. W. 945.

In a later case in that state it has been held, in effect, that
the "right of disposition of the property" of the estate by an
executor and residuary legatee in the will, who has given

such bond, "is subject to the authority of the probate court to compel the application of the property to the payment, ratably, of the decedent's debts, in case the executor fails to provide for them from other sources. Therefore it is improper, where there is a deficiency of assets, for such an executor to mortgage" or dispose of the property "in such a manner as to work preferences among the creditors." *In re Vedder's Estate,* 122 Mich. 439, 81 N. W. 356. The defendant in the case at bar, having given the bond, as required by sec. 3795, Stats. 1898, was thereby relieved from making or returning an inventory of the estate; but this court has held, in harmony with the cases cited, "that the mere ordering, receiving and approving the bond" did not *ipso facto* vest "the title to the whole estate, both real and personal, in the executrix absolutely and irrevocably." *Jones v. Roberts,* 84 Wis. 465, 470, 54 N. W. 917, 918.

"It is only when, by the terms of the will, the executor is such sole or residuary legatee, and the same is judicially determined upon due notice and opportunity for hearing, that such transfer becomes complete in law." Id.

Upon the death of a person his property not exempt at once becomes "chargeable . . . with the payment of all his . . . debts," whether he dies testate or intestate. Secs. 2270, 2277, 2281, Stats. 1898. *Union Nat. Bank v. Hicks,* 67 Wis. 191, 30 N. W. 235. The statute also expressly provides that "all the estate of the testator or intestate, real and personal, except the homestead of the deceased, and" certain personal property named in the statute, "shall be liable to be disposed of for the payment of his debts and the expenses of administering his estate." Sec. 3862, Stats. 1898. Thus, it appears from the statutes, as well as from the decisions in other states under similar statutes, that all property, not exempt, of which a testator dies seised is subject to the payment of his debts, whether the sole executor and residuary legatee gives the bond required by sec. 3795 or the bond re-

quired by the previous section. See, also, sec. 3940, Stats. 1898. *Jones v. Roberts,* 84 Wis. 471, 54 N. W. 917. In so far as the *Cole Case* held that the giving of the bond required by sec. 3795 had the effect "to pass to the executrix and sole legatee the absolute title to the whole estate, and to terminate the administration," and limit "the remedy of general creditors" to proceedings "upon the bond or against the legatee" personally, the same must be overruled.

2. The complaint alleges that by the will the testator devised to the defendant lots 71 and 72, Original Plat of Ft. Howard, "subject to the payment of debts, funeral expenses, and bequests" therein mentioned; and prays that the plaintiff's claim of $524.16 be adjudged a lien thereon. The answer alleges, in effect, that the whole of said lots, with the dwelling house on lot No. 71, and its appurtenances, except a strip of land on the northerly side of lot No. 72 of the width of 26.23 feet—being the excess over one-fourth of an acre in said lots, constitutes the homestead on which the testator resided at the time of making the will, and has actually been selected, occupied, and claimed by the defendant as her homestead ever since the will took effect, and that during all that time the defendant had resided thereon in such dwelling house, and still resides thereon. The will gave and devised to the defendant all his real and personal property which he should own at the time of his death and which should "remain after payment of" his "just debts and funeral expenses." A section of the statute cited provides, in effect, that, "if a testator shall make provision by his will . . . for the payment of his debts," etc., then "they shall be paid accordingly," but that "no general direction in any will to pay the debts of the testator out of his property shall subject the homestead to the payment thereof." Sec. 3862, Stats. 1898. There can be no question but that the quarter of an acre constituting the homestead is exempt. Sec. 2983, Id. But it is equally certain that the strip of land on the northerly side of

lot 72, mentioned in the answer, was, by the will, charged with the payment of his debts. *Merton v. O'Brien,* 117 Wis. 437, 94 N. W. 340, 341; *Evans v. Foster,* 80 Wis. 509, 50 N. W. 410. The case is broadly distinguishable in its facts from *In re Will of Madden,* 104 Wis. 61, 80 N. W. 100. Assuming that the plaintiff has a just claim against the estate of the testator, then we perceive no good reason why, upon the principle of the cases cited at the commencement of this opinion, the circuit court could not properly take jurisdiction and enforce payment of such claim out of the strip of land mentioned. *Meyer v. Garthwaite,* 92 Wis. 571, 66 N. W. 704; *Burnham v. Norton,* 100 Wis. 8, 75 N. W. 304; *Hill v. True,* 104 Wis. 294, 80 N. W. 462; and *Ludington v. Patton,* 111 Wis. 208, 86 N. W. 571.

3. The $524.16 claimed by the plaintiff is alleged to be on account of moneys loaned and advanced to the testator, and in his behalf, and upon his request, as per statement made a part of the complaint, and under the express agreement therein stated. The statement of the moneys so loaned and advanced commences in March, 1888, and terminates in December, 1894. The answer alleges that, if any of the items mentioned in that statement were paid or incurred by the plaintiff, the same were paid out of moneys and property belonging to the testator or his estate. The court found that such payments were made by the plaintiff at or about the times mentioned in such statement, but that the plaintiff made such payments out of the moneys and property which belonged to the testator or his estate. The vital question litigated was whether the moneys so paid out were the property of the plaintiff or the property of the testator or his estate. A large portion of the evidence in support of such finding consists of the testimony of the defendant, taken against objection, to the effect that the *testator told her* that he had $1,100 when his wife died, which the plaintiff took; that the plaintiff gave back to the testator $300 of that sum, leaving

$800 still in the hands of the plaintiff; that the plaintiff took the money in the fall before he was married, and put it into the Kellogg Bank in his own name; that the testator had always told her that the plaintiff had, without his consent, taken $700 or $800 from his possession in a place under the house where he kept it; that he always informed her and claimed that the plaintiff was owing him $700 or $800; that the plaintiff would not give the testator the privilege of using his own money. Such declarations of the testator were clearly inadmissible. The defendant derives her title to the estate from the testator. It is substantially the same as though the suit was against the testator himself. If the suit had been brought against him in his lifetime, no one would claim that he would have had the right to prove such self-serving declarations to his own wife. The mere fact that he has died since making the alleged declarations, and that his estate has passed to the defendant, does not make them admissible in her favor. Thus it is stated by a recent text-writer:

"The conduct, admissions, and declarations of a party in his own interest are no more competent as evidence for his estate after his death than for himself while living; and, if such statements were not made in the presence of the adverse party, they are inadmissible in a suit against the estate." 1 Jones, Ev., § 236.

So it has been held by this court:

"In an action by an administrator to prevent the enforcement of a judgment against his intestate, evidence of declarations of the debtor in his lifetime as to payment of the judgment is inadmissible." *Jilsum v. Stebbins,* 41 Wis. 235. See, also, *Carlyle v. Plumer,* 11 Wis. 96; *Ward v. Ward,* 37 Mich. 253; *Doan v. Dow,* 8 Ind. App. 324, 35 N. E. 709.

But it is said that the plaintiff himself opened the door for the admission of such testimony. We fail to find that he gave any evidence of such declaration or communication from the testator to his wife. An exception to the rule stated is

where the declarations made are against the interest of the party making them. 1 Greenl. Ev. §§ 147, 149; 1 Jones, Ev. §§ 241, 243; *Lehman v. Sherger,* 68 Wis. 145, 31 N. W. 733; *Pritchard v. Pritchard,* 69 Wis. 373, 34 N. W. 506. The giving of evidence of such declarations by the testator did not authorize the admission of such self-serving declarations.

4. Exception is taken because the defendant was allowed to prove, in effect, that April 19, 1890, the plaintiff was sued by his father, and the Kellogg National Bank garnished to recover back $750 alleged to have been paid to and received by the plaintiff herein May 29, 1888, and that April 23, 1890, the plaintiff herein paid to his father $200, and that thereupon the suit and garnishee action were both discontinued, without costs to either party. The son had the right to compromise and settle that suit in the manner stated, even if he believed the claim to be entirely unfounded. The fact that he did so was admissible in evidence. But such settlement was not an admission on the part of the son that the facts alleged in his father's verified complaint were true. The extent of the son's admission was necessarily measured by what he said and did under the circumstances, and not by the complaint made by his father against him. And yet the trial court states, in effect, that such record evidence "conclusively established" not only contradicted "much of the parol testimony, but shows conclusively William Pym's claim relative to said funds, *and the plaintiff's acquiescence in such claim.*" No such effect should be given to the compromise of that suit.

5. The defendant contends that the plaintiff's cause of action, if any, is barred by the six-year statutes of limitation. It is true that the action was not commenced until more than six years after the testator's death. The contention is that the statutes began to run on each loan and advance immediately when made. Certainly such loans and advances did not constitute a mutual account. *Butler v. Kirby,* 53 Wis. 188,

10 N. W. 373; *Fitzpatrick v. Phelan's Estate,* 58 Wis. 250,.
16 N. W. 606; *Dunn v. Fleming's Estate,* 73 Wis. 545, 41
N. W. 707. If the cause of action alleged consisted only in.
such loans and advances, then there would be force in the de-
fendant's contention. But the cause of action alleged is the
liability of the defendant as sole executrix and legatee under
the will and the statutes by reason of her acceptance of the
same and giving the bond required by sec. 3795, Stats. 1898.
The action is not on the bond. The bond is mentioned in the
complaint merely to show the liability of the defendant and
the land therein described. When did such cause of action
accrue? The testator died March 21, 1894. The will was
admitted to probate May 2, 1894. The bond was given by the
defendant May 3, 1894. The record shows that the summons
was served May 1, 1900, and that the defendant's attorneys
served notice of retainer on the plaintiff's attorneys May 2,.
1900. As virtually held in *Merton v. O'Brien,* 117 Wis. 437,.
94 N. W. 341, the defendant took the land described as her
own, subject to the payment of debts and expenses charged
thereon as stated. By accepting the devise and taking pos-
session thereof under the will, she became personally liable
to pay such charges thereon as they became due and payable.
No cause of action accrued against the defendant until after
the death of the testator. Such death, and the provisions of the
statutes cited, and the will, and the probate thereof, and the
action of the defendant thereunder, gave to the plaintiff, if he
was a creditor of the testator, a cause of action against the
defendant which he did not previously possess. We must
hold that the cause of action alleged did not accrue more than
six years prior to the commencement of this action. By rea-
son of the findings and judgment having been based upon
incompetent evidence, as mentioned, there must be further
trial and findings as to whether the moneys alleged to have
been paid by the plaintiff were in fact paid by him out of his
own money or property or out of money or property belong-

ing at the time to the testator or his estate. This is in harmony with the practice in such cases. *Brown v. Griswold,* 109 Wis. 275, 280, 85 N. W. 363; *Bostwick v. Mut. L. Ins. Co.* 116 Wis. 392, 92 N. W. 246, 259; *Kinn v. First Nat. Bank, ante,* p. 537, 95 N. W. 969; and *Fischbeck v. Mielenz,* 119 Wis. 27, 96 N. W. 426.

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded for further trial and findings as mentioned in this opinion, and for further proceeedings according to law.

SIEBECKER, J., took no part.