IDA SWISHER, Appellant, v. ESTHER M. SWISHER, et al. and the CITIZENS SAVINGS BANK and FIRST NATIONAL BANK OF IOWA CITY, Interveners, Appellees.

**Trusts:** EQUITABLE CONVERSION. A conveyance of property in trust for specified purposes with no imperative direction that the trustees shall sell the same, though containing simple authority to sell, will not effect an equitable conversion of the real property into personalty.

**Same:** TRUST DEEDS: GRANTEE AS BENEFICIARY: EFFECT. A person can not hold the legal title to real property in trust for his own benefit: So that a trust deed naming one of the grantees as a beneficiary vests in him the entire title to his undivided interest or share in the property.

**Exemptions:** BURIAL LOT: EXTENT OF EXEMPTION. Under the statutes there is exempt to the head of a family his interest in a public or private burying ground, and upon his death the same continues exempt to the family from liability for his debts.

**Same:** HOMESTEAD: EXTENT OF EXEMPTION. The homestead of every family, whether owned by the husband or wife, is exempt from execution and sale, except where there is an express statutory provision otherwise; and this exemption is for the benefit of every member of the family.

**Same:** DEVISE OF HOMESTEAD: EXEMPTION. The acceptance of a devise of the homestead by the surviving spouse will not destroy its exempt character in the hands of such devisee; and it is not subject to the general debts of the testator, but only such as are specially provided for by statute. The only instance in which general creditors may resort to the homestead of a deceased person is when he left no spouse and no issue.

*Appeal from Johnson District Court.*—HON. R. P. HOWELL, Judge.

FRIDAY, OCTOBER 25, 1912.

THE opinion states the case.—*Affirmed* in part; *Reversed* in part.

*Ball & Ball,* for appellant.

*O. A. Byington,* and *Ranck & Bradley,* for appellees.

WEAVER, J.—A. E. Swisher of Iowa City, died testate August 29, 1909, survived by his wife, Ida F. Swisher, and several minor children. By the terms of his will, after bequests to his children, to be paid from proceeds of life insurance, the testator provides for his wife as follows:

(5) I will and devise to my wife, Ida F. Swisher, all the balance and remainder of the proceeds of life insurance on my life, including accident insurance. I also will and devise to my wife, Ida F. Swisher, absolute, my homestead where I now reside, being the northeast one-fourth of out lot one in Iowa City, Iowa. Also all books, pictures, furniture and household goods, in said house and home at the time of my death. I also devise to my said wife, horse, carriages and contents of the barn on said

homestead. I also will and devise to my wife, Ida F. Swisher, all the remainder of my estate of every kind. Knowing she will make fair distribution among our children when distribution shall be made.

The benefit of the foregoing devise has been formally accepted by the surviving wife, and her acceptance has been duly filed and entered of record in the proper court. After the probate of this will, the Citizens Savings & Trust Company and the First National Bank of Iowa City filed claims against the estate on account of alleged items of indebtedness which are still unpaid. After the death of the testator the widow caused her homestead, being the same which the family was occupying at the date of her husband's decease, to be designated and its boundaries to be marked by permanent visible monuments and a plat thereof recorded as provided by law. Thereafter and pending the settlement of the estate, plaintiff instituted this action in which the children and heirs of A. E. Swisher were made defendants. In her petition she alleges that, at the time of the death of A. E. Swisher, he owned the property which she has since had platted as her homestead as above stated, also certain other real estate, including an undivided one-fifth part of certain lands formerly owned by his father, Benjamin Swisher. Under the provisions of her husband's will and of the statutes of the state applicable to the situation she asserts title to the homestead and a one-third part in value of all other real estate left by the deceased, free and clear of the demands and claims of his creditors, and she asks a decree confirming her said claim of right and quieting the title in her accordingly. In this proceeding the creditors above named intervened, admitting that plaintiff was entitled to hold, free from liability for payment of their debts, a third share in all the real estate of which her husband died seised, but denying her right to any other or greater interest in the property occupied as a homestead. In other words, they concede her

a widow's one-third share in all the real estate, but deny that the statute or the will operates to give her any other or greater right in the homestead. In the next place, they aver that the right or interest which A. E. Swisher held in the land derived from Benjamin Swisher as aforesaid is for the purposes of this case to be treated as personalty, and not as realty, and plaintiff's right to any share therein is subject to the claims of the testator's creditors. The trial court found for the interveners upon both of these issues, and decreed that as against the claims of these creditors plaintiff had waived her homestead rights in the premises, and that the extent of her right in the real estate left by her husband is the one-third thereof, which, if she so elects, may be so set off or assigned to her as to include the homestead. From this decree the widow appeals.

I. Turning first to the issue upon the nature of plaintiff's right, if any, in the land held by her deceased husband under a conveyance made to him by his father, Benjamin Swisher, it appears from the record that prior to his death, which occurred in 1885, Benjamin Swisher, with the apparent purpose of making an equitable distribution of his estate, conveyed a considerable quantity of land to his sons, Lovell Swisher and A. E. Swisher, by deed with covenants of waranty, but declaring therein that the conveyance was in trust for the following purposes and upon the following conditions:

(1) That said trustees execute to the grantor a promissory note for $8,000 bearing yearly interest and to become due in five years.

(2) That they also execute and deliver to the grantor a mortgage on the land to secure the payment of the note.

(3) That the trustees should not be personally liable for the payment of said note.

The remaining provisions we quote in the language of the instrument, as follows:

(4) Said Lovell Swisher and A. E. Swisher, trustees, shall have full, complete and absolute control of said real estate with authority to lease, work, farm or in any way manage or control same as in their judgment may be deemed best. The said trustees are also authorized and empowered, if they deem best, to cut and dispose of all wood and timber upon all of the said real estate, except what may be on the following described tracts, to wit: fifteen acres off of the east side of the southwest quarter of the northeast quarter also on the southeast quarter of the northeast quarter all in section seven, township 81, range 7. They are also authorized and empowered to make all necessary improvements and repairs upon the said property, premises, buildings, fences, etc., as may in their judgment be deemed best.

(5) Said trustees, Lovell Swisher and A. E. Swisher, are also authorized and empowered to sell and convey and they have full and complete power to sell and in them only is vested the power to sell and convey said real estate and they are empowered to pass by their deed as such trustees a full and complete title to said real estate. And in case of the death of either of said trustees the survivor is fully authorized and empowered to sell and pass the title to said real estate remaining unsold at such time. And further in case of the death of both of said trustees before the sale of any part or all of said real estate, then and in that case the authority and power to sell and convey said real estate unsold, shall pass to my legal heirs.

(6) In case of sale of said real estate by the said trustees aforesaid or in case of their death, by heirs as aforesaid, the above note of $8,000.00 shall be first paid in full and in case of sale of any part of said real estate as aforesaid, as to that part sold, the said Benjamin Swisher or the holder of the above eight thousand dollar mortgage shall release the part so sold from the lien of said mortgage upon the proceeds of said sale being applied upon the payment of said note aforesaid.

(7) The proceeds of said real estate when sold or of the income therefrom before sale, after the payment of the interest on said note, the taxes on the land, all repairs and improvements made on the premises and all charges hereinafter mentioned and after the payment of the note of $8,000.00 aforesaid, shall be by said trustees distributed

as follows, to wit: To Lovell Swisher or his heirs, to A. E. Swisher or his heirs, to Benjamin F. Swisher or his heirs, to Catharine Barrard or her heirs, to Stephen A. Swisher or his heirs, to John P. Swisher or his heirs, to each of the above a one-seventh part and to Elizabeth Cloud and Marie Cloud or their children each a one-fourteenth part.

(8) All interest upon the note aforesaid, all expenses for improvements and repairs made upon said real estate by said trustees, all taxes upon said lands or premises, and all expense incurred in the execution of this trust, together with reasonable compensation to said trustees in executing said trust, shall be a lien upon all said real estate for the payment of all the items· and expenses aforesaid and in case the income from said real estate is not sufficient to pay said expenses, the balance remaining after exhausting said income shall be borne and paid by all the parties herein mentioned (except the aforesaid grantor) in the proportion and share as their interest is set out aforesaid.

(9) The share and portion of the proceeds of said real estate coming to said Elizabeth Cloud and Marie Cloud, the said trustees shall keep at interest until they attain the age of their majority. The share coming to each of them the said trustees shall invest in loans for them, and for said investments or for the care of said fund they shall pay said trustees reasonable compensation. And in case of the death of either of them without children leaving, the share that would have gone to said deceased one shall go to the survivors, and in case of the death of both of them without children leaving, then the share that would have gone to them shall go to the legal heirs of Benjamin Swisher.

It is conceded that the interest which Elizabeth Cloud and Marie Cloud acquired under the foregoing deed had been conveyed to Lovell Swisher and A. E. Swisher prior to the latter's death. It is also conceded that John P. Swisher died intestate after the death of Benjamin Swisher, leaving his interest to be divided among the other heirs. It is the theory of the interveners, and such appears to have been the view of the trial court, that said conveyance and the terms and conditions thereof operated to work an

equitable conversion of the land into personalty, and that the only right which A. E. Swisher acquired therein was the right to share in the income therefrom and in the proceeds of a sale thereof. That real estate may undergo equitable conversion into personalty under certain conditions of fact is too well established to require citation of authorities. Whether that effect follows in the case here presented depends upon the nature and validity of the trust and the nature and extent of the powers conferred upon the trustees. Turning again to the deed, we find that it clearly conveys the title to the trustees named; it grants to them authority to use, lease, and control the land, to cut timber thereon, and to make necessary improvements; it authorizes them to sell and convey the land, and, upon the death of both trustees without having exercised that power, it should pass to the legal heirs of the testator who were in such contingency given like power and charged with like trusts. If a sale was made, the proceeds were to be divided in equal shares between the living children of the grantor and the representatives of those who might then be dead. It will be observed that no date or time is fixed when this trust or power is to terminate. It is not made to depend upon the happening of any event determinate or indeterminate. It does not cease upon the death of the trustees, but passes from them to the heirs of the grantor. No direction or obligation is laid upon the trustees to sell the land, and, so far as expressed in the language of the grant, they could continue to hold the property indefinitely. The sale, if any be made, and the time and terms thereof are left solely to their discretion. The sole beneficiaries of the trust are named in the deed (being, as we understand it, all the grantor's heirs expectant then living), and among these beneficiaries are the trustees themselves.

In our opinion a conveyance upon such terms does not work an equitable conversion of the property conveyed so far as the grantees are concerned. That effect follows

only where by the express terms of the instrument or by

*1. TRUSTS: equitable conversion.*

necessary implication therefrom a sale of the property is imperatively required. *Hanson v. Hanson,* 149 Iowa, 84; *Darlington v. Darlington,* 160 Pa. 65 (28 Atl. 503); *In re Fox's Estate,* 52 N. Y. 530 (11 Am. Rep. 751); *James v. Throckmorton,* 57 Cal. 368; *Neely v. Grantham,* 58 Pa. 433; *Cooke v. Platt,* 98 N. Y. 35; 3 Pomeroy's Equity (3d Ed.) section 1160.

The deed from Benjamin Swisher unquestionably grants the power of sale, but we read it in vain to find any requirement of sale. On the contrary, it seems to treat the power of sale as discretionary only and to contemplate its indefinite continuation in the heirs of the grantor after the death of the trustees named in the deed. It is, to say the least, an open question whether such a trust is of any validity, or, if valid, whether it is more than a mere naked trust by virtue of which the trustees take no more than the legal title to the property of which the children or heirs of the grantor named in the deed are the beneficial owners. See *Cooke v. Platt, supra.*

In the case at bar, however, we need only to consider the effect of this deed as it relates to the grantee A. E. Swisher. As we have already noted, he is by the terms of

*2. SAME: trust deeds: grantee as beneficiary: effect.*

the deed not only made a trustee, but is by the same instrument named as one of the beneficiaries of the trust. The necessary effect of making him a trustee for his own benefit was to vest him with the entire title and estate in and to his fractional or undivided interest or share in the property. As grantee in the deed he acquired the legal title, and as a beneficiary of the trust he acquired the equitable title or right to share in the distribution and the union of the legal and equitable title in the same person leaves nothing outstanding upon which the trust or delegated power can operate. That a person can not hold the legal title to land

in trust for his own personal benefit is a proposition which inheres in the very nature of trusts. *Woodward v. James,* 115 N. Y. 357 (22 N. E. 150); Tiedeman's Real Property, section 512; *Mason v. Mason's Ex'rs,* 2 Sandf. Ch. (N. Y.) 432; *Wills v. Cooper,* 25 N. J. Law, 137; *Bolles v. Trust Co.,* 27 N. J. Eq. 308. In other words, the effect of the conveyance from Benjamin Swisher is to sink or merge the equitable right or title of A. E. Swisher in the legal estate conveyed to him by the deed, and the entire estate is vested in such grantee to the extent of his proportionate share in the property. In principle this case is quite identical with *Mason v. Mason, supra.* In that case the owner of property devised it in trust to three named trustees, one of whom was George Jones. By the terms of the trust George Jones was made one of the beneficiaries in the distribution of a surplus fund which was to be divided in the final settlement of the trust estate. In adjusting the rights of the parties the court there says: "In regard to George Jones, who in this instance is a beneficiary of the trust, the only consequence is that he takes a legal and not an equitable estate in his proportion of the surplus to be distributed." In *Bolles v. Trust Co., supra,* the rule is stated as follows: "Where there is a devise to trustees one of whom is to take a beneficial interest in the trust property, he takes a legal estate to the extent of such interest." The rule thus stated is recognized by all the authorities to which our attention has been called. To the extent, therefore, of his proportionate interest or share, A. E. Swisher died seised of a heritable estate in the lands conveyed by Benjamin Swisher.

II. In the foregoing statement of the case we have omitted to note that among the items of the property left by the deceased is a burial lot in the cemetery at Iowa City, and plaintiff in her petition alleges that the title to this lot has been vested in her by the terms of the will free from liability for

3. EXEMPTIONS: burial lot: extent of exemption.

her husband's debts, and asks that such exemption be established and confirmed by the court's decree. The trial court in disposing of the case failed to make any mention of this feature of plaintiff's claim, and upon the face of the decree, if literally construed, there is room for doubt whether the intervening creditors may not subject two-thirds of this lot to the payment of their claims. Although counsel for appellees do not argue the question, we think it safe to assume it is not proposed or intended to assert any claim adverse to appellant's title to the resting place of her dead. Under the law of this state the creditor's pursuit of his debtor is supposed to stop at the grave. To that end our statutory exemptions from execution for the benefit of the head of a family include "an interest in a public or private burying ground" (Code, section 4008); and it would seem that here at least is one right or privilege which an unfortunate debtor does not waive by dying. The very purpose of the act is to secure him and to his family a place of final earthly repose which shall be sacred against intrusion by the sheriff and the bill collector, and so far as we know that right has never been denied by the courts of this state. The omission in the decree below of any provision sustaining this exemption is without doubt the result of an oversight in framing the record entry—an error which will be corrected as a matter of course before the case is finally disposed of.

III. As will be seen by the foregoing statements, the interveners concede plaintiff's right to hold the one-third of the real estate and confine their efforts to a denial of her claim to any greater interest in the home-

4. Same: homestead: extent of exemption.

stead. This concession eliminates the other real estate from the field of controversy, and we shall therefor limit our investigation to the single question whether, under the circumstances—none of which are in dispute—the intervening creditors are entitled to subject two-thirds of the value of the homestead to the payment

of their claims against the deceased.   The alleged right to resort to the homestead for the payment of these debts is based upon the proposition that, while the widow and her children would have been entitled to hold this property absolutely exempt from the claims of her deceased husband's creditors had he died without will, yet as he did leave a will giving her the title, and she accepted it, she thereby waived the exemption and exposed her home to levy and sale at the demand of said creditors.   The proposition thus stated is a novel one in this court, and its answer involves a reading and construction of the statute which creates and defines all rights of homestead.   The keynote of that statute is found in the opening section thereof, which reads as follows: "The homestead of every family, whether owned by husband or wife, is exempt from judicial sale where there is no special declaration of the statute to the contrary."   Code, section 2972.   The exemption, it will be noted, is not merely for the benefit of the husband or wife alone, but for the family of which they are a part. It was unquestionably within the power of the Legislature to make that exemption, unlimited, absolute, and without exception, and this is the clear effect of the provision we have just quoted, subject only to the restrictions found in the last clause.   Stated otherwise, the statute clothes the family homestead with absolute exemption from the claims of the creditors save only in cases where the Legislature has expressly withheld that protection.   If then in any case a creditor asserts the right to subject the homestead of his debtor to the payment of his claim against husband or wife, that demand will be refused and the right denied unless he can point out some statutory exception within the terms of which he brings himself.

Reading the statute through section by section, we find the following exceptions from the sweeping effect of the homestead exemption:   (1) The homestead may be conveyed or incumbered where the husband and wife join in

the execution of the same joint instrument for that pur-

5. SAME: devise of homestead: exemption.

pose. Code, section 2974. (2) It may be made subject to mechanics' liens for labor and materials furnished exclusively for its im-provement. Code, section 2975. (3) It may be subjected to the payment of debts contracted prior to its acquisition and for debts created by written contract expressly stipu-lating for such liability and signed by both husband and wife. Code, section 2976. The foregoing provisions con-stitute and include every statutory exception to the exempt character of the homestead so long as the owner lives and does not abandon it. Concerning the effect of the owner's death it is further provided that: (4) Upon the death of either husband or wife the survivor may continue to pos-sess and occupy the homestead until it is otherwise disposed of according to law, and the setting off the survivor's share in the real estate of the deceased spouse is a disposal of the homestead within the meaning of this provision. The survivor may elect to retain the homestead for life in lieu of such share, but if there be no survivor the homestead descends to the issue of the husband or wife exempt from the antecedent debts of their own or of their deceased parents. Code, section 2985. (5) *If there be no such survivor or issue,* it may be sold for the payment of debts without reference to its homestead character. Code, section 2986. (6) *Subject to the rights of the surviving husband or wife the homestead may be devised* like other real estate of the testator. Code, section 2987. If the interveners in this case have any right to enforce their claims against the homestead of the testator, it must be found somewhere in the six sections of the statute above cited, or in the statute of wills, in which it is provided that any person of full age and sound mind may dispose of his property by will sub-ject to the rights of homestead and exemptions created by law and the distributive share given by law to the sur-viving spouse, but where the survivor is made a devisee it

shall be presumed, unless the intention is clear and explicit to the contrary, that such devise is in lieu of such distributive share, homestead and exemptions.    Code, section 3270.

Do these sections or either of them expressly or impliedly provide that a widow's acceptance of a devise to her of the exempt property shall have the effect to destroy its exempt character in her hands and subject it to sale for the satisfaction of debts not one of which comes within the favored classes mentioned 'by the statute, and not one of which was contracted upon credit of its ownership by the debtor? Certainly no such provision is to be found in the express language of the statute. Can such meaning be extracted from it by any fair implication or reasonable construction? This inquiry must be answered with due deference to the well-established rule that the legislative language must be liberally construed with a view to promote the beneficient purposes of the enactment. Code, section 3446; *Bank v. Eyre,* 107 Iowa, 13; Ebersole v. Moot, 112 Iowa, 598.

True, as appellees argue, this does not mean that the court may by dictum or decision create a right of exemption where none is found in the statute; but it does affirm the very just proposition that, where the statute creates a general rule of exemption in favor of the family and the home, its protection shall not be denied in any particular case unless it clearly falls within some recognized statutory exceptions. Exemption of the homestead is the rule, its denial is the exception, and the courts have not the authority nor should they have the disposition to enlarge the exceptions beyond the plain import of the legislative expression. If creditors are clothed with any such right, it must be found somewhere in the several sections of the statute to which we have made reference. It is certainly not to be extracted from sections 2974, 2975, or 2976, for there is here no mortgage, mechanics' lien, or obligation ante-

dating the acquirement of the homestead, and there is no failure, of issue which exposes the homestead to forced sale under section 2986. If the exemption is to be avoided, it must therefore be because of something to be found in sections 2985, 2987, or 3270. As we have already noted, section 2985 gives to the surviving widow an election between the life use of the homestead and her statutory share in the real estate of her deceased husband. Manifestly this section has special reference to cases where the spouse holding title to the homestead dies without will, while the remaining sections cited (2987 and 3270) deal more particularly with cases where the situation is affected by the existence of a will. Section 2987 does no more than provide that, subject to the rights of a surviving spouse, the homestead may be devised like other real estate. This provision is coupled with no statement or declaration that such devise shall affect the exempt character of the property. Section 3270 is to the effect that where the will makes special provision for the survivor, and the contrary intent is not clearly apparent, it shall be presumed to have been intended in lieu of distributive share, homestead, and exemptions, and in such case the survivor can not rightfully claim the benefit of both the statute and the will but must choose between them. But suppose the will gives to the widow the very property, real and personal, which in the absence of a will she and her children could rightfully hold absolutely exempt from the claims of creditors, and she sees fit to accept the devise, is she thereby stripped of the protection which otherwise would not be open to question? Certainly the statute does not so expressly provide, and such a result is so manifestly unreasonable and unjust that the intention ought not to be attributed to the Legislature by mere implication or construction. We have held that one spouse may convey the homestead to the other, or both may unite and convey it to an entire stranger without affecting its exemption, and this is true even though such transfer

has been made with the intent or belief that thereby they were hindering or delaying creditors in the collection of claims. *Payne v. Wilson,* 76 Iowa, 377; *Beyer v. Thoeming,* 81 Iowa, 517; *Butler v. Nelson,* 72 Iowa, 732; *Officer v. Evans,* 48 Iowa, 557; *Griffin v. Sheley,* 55 Iowa, 513; *Dettmer v. Behrens,* 106 Iowa, 585; *Delashmut v. Trau,* 44 Iowa, 613.

It will be observed that section 3270 couples together and subjects to the same conditions the widow's distributive share, her homestead, and the other general exemptions provided by law in favor of the family, and if interveners' contention is right, and the acceptance of a devise of such property waives the exemptions provided by statute, then she may hold absolutely nothing against the demands of her husband's creditors, and they may take from her the last fraction of his estate and throw her and her children penniless upon the world. To so hold is to say that, while the court will protect the homestead against creditors even where the debtor voluntarily conveys it to a stranger with intent to defraud, yet, if the debtor gives it by his will to the wife whom he is bound by the most sacred of ties to provide for and protect, the creditors may intervene and absorb the estate to the last dollar. If they may take the homestead, then by the same token and the same process of reasoning they may take her dower or distributive share, the family horse, the last cow, and all the other items of comfort and necessity which the statute has sought to preserve for the benefit of the family. True, as we have already said, appellees concede to plaintiff the right to a distributive share in her husband's estate, and because of this concession we do not undertake to deal with that phase of the decree below; but it must be said that, if their position in that respect is well taken, then their claim as relates to the effect of the will upon the homestead is clearly illogical and unsound.

Counsel argue that to sustain the widow's right to

hold this homestead is to enable her to hold more property against her husband's creditors than the statute would otherwise give to her, for, they say, had she refused to take under the will, then two-thirds of the homestead would have been subject to the payment of the testator's debts. But is this true? Suppose the widow had refused the devise and asserted her statutory rights, upon what theory would this have enabled the interveners to have seized the homestead or any part of it? There is of a certainty no express statute to that effect, nor do we find anything requiring such construction. The will so far as it relates to the homestead affects in no manner the interests of the creditors. It may affect the interest which would have otherwise passed to the heirs, but it neither increases nor decreases the fund to which creditors may rightfully look for the payment of their claims. Let us suppose, for instance, that the deceased had left no other estate than this confessedly exempt homestead, and that by will he devised it to his wife; then, according to the contention of the appellees, her refusal of the devise would operate to leave two-thirds of the homestead subject to the claims of creditors, and her acceptance of it would be followed by the same result. Thus the effort of the husband to secure to his family the benefit of property which the law has set aside for its protection and upon which the creditors have neither legal, equitable, nor moral claim would be made the excuse for a denial of that protection. We are unwilling to affirm that doctrine.

The question here raised has not often had the consideration of the courts, and the lack of uniformity in homestead statutes ordinarily renders reference to adjudicated cases of uncertain value but we find a few decisions the reasoning of which is quite in point in this discussion. Thus, in *Myers v. Myers,* 89 Ky. 442 (12 S. W. 933), the Kentucky court, dealing with a like question, says: "It has been decided by this court more than once that the

owner of a homestead has power under the statute to convey by deed and pass a good title to the property, not exceeding $1,000 in value, the reason being that such conveyance does not affect rights of creditors (referring to *Brooks v. Collins,* 11 Bush (Ky.) 622, and *Richard v. Utterback* (Ky.) 9 S. W. 422), and we see no reason why he may not do practically the same thing by will, because his creditors are prejudiced in one state of the case no more than in the other; in fact, they are not wronged in either, but in both the object of the law, which is to secure to every housekeeper with a family a certain and uninterrupted enjoyment of a homestead, is accomplished." The same rule is affirmed in *Pendergest v. Helkin,* 94 Ky. 384 (22 S. W. 605).

In Minnesota the statutes governing the descent and devise of homestead property are substantially the same as our own, except that a valid devise thereof requires the written assent of the surviving spouse. Where a surviving widow after the testator's death indicated her consent to a devise of her homestead, and it was claimed by creditors that the exemption was no longer available, the court overruled the point, saying: "When living the owner may sell and convey the homestead, or he may make a fraudulent transfer of the same, and such sale, conveyance, or transfer does not render the property liable for his debts. It is absolutely exempt. The effect of section 4470 is to allow a homestead to descend or to be devised as therein provided free from all claims on account of indebtedness. The election of the surviving husband or wife to take under the will in such case does not affect the creditors or take from them any assets out of which they are entitled to have their claims satisfied. The written assent of a surviving husband or wife to a testamentary disposition of the property has no effect upon the exemption and can not be regarded as rendering the same liable for the satisfaction of

the devisor's debts." *Eckstein v. Rall,* 72 Minn. 95 (75 N. W. 112).

None of our cases cited by the appellees are inconsistent with this conclusion. Counsel rely largely upon *Meyer v. Meyer,* 23 Iowa, 359, and *Stevens v. Stevens,* 50 Iowa, 491, and others of the same class holding, as the statute clearly provides, that a widow can not take both homestead and distributive share in her deceased husband's estate. But in none of these cases has the court attempted to consider or pass upon the effect of a wife's acceptance of a devise of the property constituting the homestead. The statute expressly provides that the homestead shall be devisable, but nowhere declares that its devise shall operate to destroy its quality of exemption. Much of the argument of appellees proceeds upon an incorrect assumption of the position taken by the plaintiff. She is not claiming the property under the statute which gives her an election between distributive share and the right of life occupancy. She claims the fee by virtue of the devise and the statute which makes it absolutely exempt except where otherwise specially provided. In this position we think she is sustained both by the letter and the spirit of the statute.

The only statutory authority for subjecting the homestead of a deceased person to payment of the claims of general creditors is where the deceased leaves no surviving spouse and there is a failure of issue. Code, sections 2972, 2985, 2986.

It follows from this conclusion that, in so far as the decree below operates to subject the homestead to the payment of the interveners' claims, it must be reversed, and the cause will be remanded for a modified decree in harmony with this opinion. The decree will also confirm and quiet the title to the cemetery lot in the plaintiff.

*Affirmed* in part; *Reversed* in part.