IN RE ESTATE OF GUTHRIE.

**HOMESTEAD:** Surviving Issue—Right of Exemption. Homesteads which pass to the owner's issue are exempt from the debts of such ancestral owner contracted subsequent to the acquisition of the homestead, whether the issue take by *will* or by *descent.* (Sec. 2985; Code, 1897.)

*Appeal from Mahaska District Court.*—K. E. WILLCOCKSON, Judge.

MAY 20, 1918.

APPEAL by creditors of the estate from an order holding certain property to be exempt from liability for payment of their claims. The material facts are stated in the opinion. —*Affirmed.*

*Roberts & Webber* and *John R. Howard,* for appellants.

*Burrell & Devitt* and *Malcolm & True,* for appellees.

WEAVER, J.—James D. Guthrie died testate, January 22, 1916. He was the head of a family, and held title to a forty-acre tract of land which he had occupied as a homestead for

forty years or more. His surviving family consisted of five children, two of whom were born to him in lawful wedlock, and three who had been regularly and legally adopted by him. By his will, which has been duly admitted to probate, he bequeathed to each of his adopted children the sum of $25, and directed that, after paying the further sum of $800 to his daughter, Alice M. Stuart, the residue of his estate should be equally divided between said daughter and his son, Leonard Colwell Guthrie. S. V. Reynolds, named as executor of the will, accepted the trust, and letters testamentary were duly issued to him. In due time, creditors presented claims against the estate, to the amount of $6,000 or more. A considerable proportion of these claims had been reduced to judgment in the lifetime of the testator and more than ten years before his death, but no claim is made that any of the debts were contracted before the property in question acquired its homestead character. Aside from his homestead property and certain exempt household furniture of small value, the testator left little or no estate. The creditors, adopting the theory that the homestead was liable for the payment of their claims, demanded of the executor that he make application to the court for authority to sell the property, and that the proceeds thereof be applied to the satisfaction, in whole or in part, of their several demands. To protect himself in the premises, the executor filed a petition in court setting forth the facts as above related, asked that the creditors and the beneficiaries of the estate be called in, and that the status of the homestead property, whether exempt or otherwise, be determined. The parties in interest appeared to the proceeding, and, after consideration of the conceded facts, the court found and adjudged that the property was not subject to sale for payment of the claims of the creditors. From this finding the creditors appeal.

The proceedings are somewhat out of the ordinary, but the court seems to have had jurisdiction of the parties and of the property in question, and there is no apparent reason for not disposing of the case on its merits.

The proposition contended for by the appellants is that, as the heirs took the property by the will of the ancestor instead of by descent from him, under the provisions of our statute they took it divested of the homestead exemption, and the creditors are entitled to exhaust it in payment of their claims.

The point made is ruled against the appellants by the decision in *Swisher v. Swisher,* 157 Iowa 55, 64. Counsel rely on *Rice v. Burkhart,* 130 Iowa 520, and *Voris v. West,* 180 Iowa 138; but these cases are not parallel with the case before us, either in fact or in principle. In each of those cases, the heir or devisee of the homestead was claiming exemption therefor from liability for his own debts, and its exemption from liability for the debts of his ancestor was in no manner involved or considered. In the *Voris* case, it was held that the privilege of exemption of the homestead from liability for the debts of the heir or devisee does not exist where the deceased owner of the homestead leaves a surviving spouse; and in the *Rice* case, it was also held that there was not such right in the heir or devisee when he takes by purchase, and not by descent. In the *Swisher* case, we for the first time had occasion to consider whether the homestead exemption which is provided for the owner and his family against liability for his debts is lost simply because, instead of leaving it at his death as intestate property, he devises it to some or all of the members of his family, for whose protection the exemption is expressly provided. After a somewhat extended examination of the statute, we answered the inquiry in the negative; and we see no good rea· son for now holding otherwise. The homestead right is carefully guarded by the express provision which makes it applicable in all cases "where there is no special declaration of statute to the contrary." Code Section 2972. There is a special declaration in Code Section 2986 which provides for the removal or extinction of the exemption when the ancestor dies intestate and there is *no surviving spouse or issue;* but the statute will be searched in vain for any express

or necessarily implied provision giving any such effect to the act of the owner in devising the homestead; and especially is this the case where the devise is made to one whom the statute is intended to protect. The owner could have conveyed it in his lifetime to the same persons named in his will, and they could maintain their title free from the claims of his creditors, though not free from the claims of their own creditors; and if there be any good reason in the statute, or outside of it, for making his devise any less effective than his deed, it is certainly not apparent. There are no appealing or persuasive equities in favor of appellants which should lead the court to seek an excuse for sustaining their claim. The credits were extended to the deceased after his homestead rights had been acquired. The creditors cannot say they trusted him on the strength of his ownership of this property, which they knew the law exempted; and they are not wronged, either in a legal or a moral sense, in denying them recourse upon the homestead. In the language of the Kentucky court:

"The owner of a homestead has power, under the statute, to convey, by deed, and pass a good title to the property. * * * We see no reason why he may not do practically the same thing by will, because his creditors are prejudiced in one state of the case no more than the other; in fact, they are not wronged in either; but, in both, the object of the law, which is to secure to every housekeeper with a family, the certain and uninterrupted enjoyment of a homestead, is accomplished." *Myers' Guardian v. Myers' Admr.*, 89 Ky. 442, 446. See *Pendergest v. Heekin*, 94 Ky. 384.

The same rule is affirmed in *Eckstein v. Radl*, 72 Minn. 95. Again, the statute provides that, subject only to the rights of a surviving spouse, the owner of a homestead may devise it by will, like other real estate. Code Section 2987. In other words, subject to the right of the surviving spouse (which is a right of occupancy only), the owner of the homestead may devise it to whom he pleases, just as, with the consent of the spouse, he may sell and convey it or give it away

in his lifetime.   In neither case do his creditors suffer wrong,
nor is the property thereby exposed to seizure for payment
of their claims.   *Delashmut v. Trau,* 44 Iowa 613; *Officer &
Pusey v. Evans,* 48 Iowa 557; *Stubblefield v. Gadd,* 112 Iowa
681; *Citizens' Savings Bank v. Glick,* 134 Iowa 323; *Larson
v. Curran,* 121 Minn. 104 (140 N. W. 337) ; *Eckstein v. Radl,*
72 Minn. 95 (75 N. W. 112) ; *Dettmer v. Behrens,* 106 Iowa
585, 587; *Burdick v. Kent,* 52 Iowa 583; *Johnson v. Harri-
son,* 41 Wis. 385; *Myers' Guardian v. Myers' Admr.,* 89 Ky.
442.   Our statute, which makes the homestead devisable by
will   (Code Section 2987) does not, even by indirection, sug-
gest that such a devise is subject to claims of creditors
against whom the homestead right had been acquired.   It
does make such devise subject to the right of the surviving
spouse, and the expression of this one condition alone im-
plies the exclusion of all others.   Speaking on this subject,
and applying a statute very similar to our own, the Minne-
sota court says:

"The whole trend of legislation on the subject of the
descent of the homestead free from debts is indicative of a
policy that creditors of the deceased shall have no recourse
to the homestead, unless the debtor leaves no spouse or chil-
dren, and either makes no devise thereof, or clearly indicates
an intention to make a devise thereof subject to the claims of
his creditors."   *Larson v. Curran,* 121 Minn. 104 (140 N. W.
337).

In Wisconsin, the statute is perhaps a little more ex-
plicit on the subject than is ours; but the court there, speak-
ing generally upon the course of modern legislation upon
homestead rights, says:

"The spirit and policy of all the legislation upon the
subject plainly are to exempt the homestead and its proceeds
absolutely from the mere personal debts of the owner.   If
the owner disposes of it by will, it descends to the devisee
free from the incumbrance of all judgments and claims
against the testator; and if he dies intestate, it descends to

his widow or heirs." *Johnson v. Harrison,* 41 Wis. 381, 385.

In the case of *Cross v. Benson,* 68 Kan. 495, the husband, H. C. Cross, owning a homestead, died, testate, devising the property to his widow, who elected to take under the will. Later, the widow died testate, devising the homestead to one Newman; and thereafter, creditors of H. C. Cross sought to subject the homestead to the payment of their claims. In that state, the homestead exemption right is fixed by a constitutional provision, which declares that the homestead (describing its limits) shall be exempt from forced sale under legal process, and shall not be alienated without the joint consent of husband and wife. Certain exceptions to the application of this provision are made, but are not here material. The creditors, in support of their claim, argued, as is argued here, that the exemption ceased with the death of Cross; also that the taking of title by the widow under the will, instead of under the statute of descent, operated to abrogate the homestead right. Refusing to so hold, the court says:

"The homestead privilege was no more disturbed than it would have been had H. C. Cross deeded the lots to his wife in his lifetime, and while she was occupying them as a homestead. She continued in the enjoyment of precisely the same right to immunity from the loss of her hearthstone at the suit of her husband's creditors as before his death."

We applied the same principle in the *Swisher* case.

Considerable confusion in thought and argument on this subject has grown out of a failure to discriminate between a loss or abandonment of the homestead right by a surviving spouse, and a loss of the homestead exemption from liability for the debts of the deceased owner. Nearly all of the homestead cases coming before the courts have involved questions of descent and distribution, rather than questions of exemption. They have involved the effect of election by the surviving spouse between homestead and dower; between homestead rights and rights under the will of the deceased spouse; also, contests between the survivor and the heirs

over the existence of any homestead, and over its alleged
surrender or abandonment by the survivor; and in some in-
stances, the right of heirs to hold the homestead exempt
against the claims of their own creditors: but cases are very
rare (if there be any) in which general creditors of a de-
ceased owner, holding claims against him which accrued aft-
er the homestead was acquired, have asserted any right to
subject it to payment of their demands, where it is conceded
that the deceased owner left either a surviving spouse or is-
sue. The lack of any precedents for sustaining such a claim
is doubtless due to the explicit terms of the statute, which
exempts the homestead of every family from judicial sale.
where there is no special declaration of statute to the con-
trary (Code Section 2972), and preserves such exemption in
favor of the surviving spouse and heirs (Code Section 2985).
It is doubtless true that, except as against the rights of the
surviving spouse, the owner may, by will, subject the home-
stead to the payment of his debts (Code Sections 2985 and
2987); but, in the absence of any such state of facts, the
statute provides but one condition under which the exemp-
tion with which the homestead is clothed will be removed,
and the property subjected to the payment of the general
creditors of the deceased owner, and that is where he leaves
no surviving spouse or issue (Code Section 2986). The sur-
viving spouse may lose or waive her right of occupancy; the
homestead as to her may be abandoned or cease to exist: but
none of these conditions can have the effect to destroy the
exemption, if there be issue. *Kite v. Kite,* 79 Iowa 491; *John-
son v. Gaylord,* 41 Iowa 362, 366; *Orman v. Orman,* 26 Iowa
361; *Porter v. Perkins,* 125 Iowa 55; *In re Estate of Coulson,*
95 Iowa 696. In other words, assuming the acquirement of
a homestead by the debtor before the date of his indebted-
ness to a general creditor, and the death of such debtor, leav-
ing issue who take the title to the homestead by inheritance
or by will or by deed (see *Dettmer v. Behrens,* 106 Iowa
587), such issue takes the title precisely as it existed at the
owner's death, free from any charge or liability for the own-

er's debts,—not because of any homestead right in the issue, but because of the homestead right and exemption which had been acquired by the ancestor. Whether such issue takes it free also from liability for his own debts is made, by our decisions in *Rice v. Burkhart,* supra, and *Voris v. West,* supra, to depend, first, upon the fact as to whether title passes by descent or purchase; and second, whether the ancestor did or did not leave a surviving spouse: but this question does not arise upon the present record. The distinction between exemption from liability for the debts of the ancestors and exemption as against the debts of the heirs is expressly recognized in the opinion in the *Voris* case. The exemption as against the debts of the ancestor is, as we have said, clear and positive, and is declared, by the law which created it, to apply in every case where there is no special statutory direction to the contrary. There is no statutory exception applicable to the circumstances of this case, and the exemption must be preserved.

The judgment below was right, and it is—*Affirmed.*

PRESTON, C. J., GAYNOR and STEVENS, JJ., concur.