BENJAMIN WILLIAM LUCKENBILL et al., Executors, Appellees, v. D. W. BATES, Superintendent of Banking, Receiver of Mediapolis State Bank, Appellant.

No. 42679.

DECEMBER 17, 1935.

Edward L. O'Connor, Attorney General, and Lehan T. Ryan, Assistant Attorney General, (Max A. Conrad and Robert T. Conrad, of counsel) for appellant.

Holstein & Hill, for appellees.

ALBERT J.—D. H. Luckenbill died on or about the 25th day of February, 1930, without a surviving spouse. He left a will, which was admitted to probate, the material part of which is as follows:

"1st. I direct my executors hereinafter named to pay all my just debts, together with the expenses of my burial and of the administration of my estate, as soon as practicable after my decease.

"2nd. At and not before the expiration of the time herein specified, I direct my executors hereinafter named, or either or any of them or any administrator with this will annexed, to convert into money all of the estate of which I may die seized, whether real, personal or mixed, and wherever situated, and to that end I hereby authorize said officers or any of them to sell any and all of the real estate of which I may die seized in such parcels or lots as shall to them seem advisable, and also to execute, acknowledge and deliver to the purchasers thereof good and sufficient deed or deeds to the parcels or lots so sold;

provided none of my real estate shall be sold nor any distribution of my estate made until my sons Benjamin William Luckenbill and Roscoe Henry Herman Luckenbill shall have returned from this war, in which they are serving their country.

"3rd. It is my will, and I hereby direct my executors to divide five-sixth (5/6) of my estate, real and personal equally among my following named children, to wit: Keo B. Bridwell, George Perry Luckenbill, Otis Frank Luckenbill, Benjamin William Luckenbill and Roscoe Henry Herman Luckenbill; and in the event of the death of any of them, the share of the one so dying shall be divided equally among his or her children.

"4th. The remaining one-sixth (1/6) of my estate, real or personal I direct my executors to divide equally between and pay over to the two children of my deceased son, David Birke Luckenbill, namely, David Brown Luckenbill and Birke Luckenbill, less the sum of Thirteen Hundred and Forty-six ($1,346.00) Dollars, with interest from this date, representing money heretofore advanced to their father the said David Birke Luckenbill, which said sum of $1,346.00 shall be added to my estate and equally divided to my children above named."

This will bore date of the 29th day of July, 1918.

The executors and executrix named in the will were appointed by the court on the 17th day of April, 1930. On the 18th day of October, 1933, an executor and the executrix made application for authority to sell and convey real estate under the terms of the will. Among other things, they alleged in this application that the World War referred to in the will was over and the two sons therein referred to had been discharged from their service in the Army and had returned to their homes. The application described, among other real property, 24.59 acres, more or less, in the north part of the east half of the northwest quarter of section 26, township 72 north, range 3 west, Des Moines county, Iowa, together with 12 lots in the town of Mediapolis, in Des Moines county, and the southeast quarter of section 15, township 72 north, range 2 west, Des Moines county, Iowa. It also alleged that the 24.59-acre tract was the homestead of the deceased at and prior to the time of his death, and further alleged that this last described tract is exempt from liability for judgments of the deceased, and is likewise exempt to the applicants as his issue. It alleged that

the personal property of the estate amounts to $2,500, and the claims filed against the estate amount to $11,000, not adding interest or costs of administration, and that there is a $3,000 mortgage, plus interest, on the real estate, and that the personal estate is entirely inadequate to pay the debts and obligations of the estate. They asked for an order authorizing the conveyance, free and clear of encumbrance, of this real estate, as a means of complying with the terms of the will. An order was made pursuant thereto on the 10th day of November, 1933, authorizing the sale and conveyance, free and clear of liens or encumbrances, of the homestead property involved, and providing that "the proceeds arising therefrom shall pass to the respective heirs free and clear of encumbrance as exempt to them by law." Later, Bates, as superintendent of banking, filed a motion to vacate and set aside the above order. He refers to the different provisions of the will and insists that the debts which he represents are, under the first provision of the will, entitled to be paid before any of the heirs shall take; and concludes by alleging as reasons for his motion (1) said decree is contrary to law, (2) said decree is contrary to the will, (3) said decree is contrary to the intention of the said D. H. Luckenbill as expressed in his last will and testament, and (4) that the court was induced to sign the decree through the misrepresentation and misstatement of the facts by the executor and executrix. On hearing the court found that there was no misrepresentation or misstatement of facts to induce the court to sign the decree setting aside the 24.59 acres as a homestead exempt from the debts of the estate, and that the order made was in accordance with the intention of the deceased and the laws of the state of Iowa, and the motion to vacate and set aside the former order was overruled. Hence, this appeal.

Bates, as receiver of the Mediapolis State Bank, had a claim against the D. H. Luckenbill estate in the sum of $6,461.05, plus interest, which was a debt owing to said bank by the said Luckenbill, which arose long after the acquiring of the homestead and before the death of said D. H. Luckenbill.

Stripped of its verbiage, the single question here presented is whether or not the order of the court refusing to subject the homestead to the payment of debts is a valid order.

■■■ Appellant first insists that, because of the first provision of the will, to wit, that the executors are directed to pay

all just debts and funeral expenses, the creditors are given priority, and that the debts must be paid before any of the other provisions of the will can be carried out. It seems to be the general rule that mere phrases of this character in a will are not sufficient to give the debts priority. See Cross v. Benson, 68 Kan. 495, 75 P. 558, 64 L. R. A. 560; Pym v. Pym, 118 Wis. 662, 96 N. W. 429; Larson v. Curran, 121 Minn. 104, 140 N. W. 337; 44 L. R. A. (N. S.) 1177. To make the devise subject to the payment of the testator's debts, the language must be unequivocal and imperative. See cases just cited. When a will provides, as most wills do, that the executor shall pay the just debts and funeral expenses, it merely recites the duty which every executor or administrator would have under the law; so we do not think that this direction here is more than a mere formality, or that it has the force and effect as claimed by the appellant. Buch v. MacEachron, 209 Iowa 1168, 229 N. W. 693; In re Will of Grilk, 210 Iowa 587, 231 N. W. 327.

In the case of In re Estate of Schultz, 192 Iowa 436, 185 N. W. 24, the third paragraph of the will provided:

"Subject to the payment of my just and lawful debts, I give, devise, and bequeath all the remainder of my property, both real and personal * * * to my six children, to wit (naming them), share and share alike."

In the case of In re Estate of Guthrie, 183 Iowa 851, 167 N. W. 604, the provision in the will as to the payment of debts was entirely wanting. The paragraph in the will reads:

"After the payment of my funeral expenses, I bequeath to my adopted children (naming them), if living at the time of my death, a legacy of $25 each. Second: All my property, personal or real, shall be equally divided between my two children (naming them)."

Where a statutory provision makes the payment of the testator's just debts mandatory, a direction in the will that such debts be paid is meaningless as to the actual debts. See 69 C. J. p. 1219, and numerous cases therein cited.

The point of distinction here made is between a general provision, as is usual in the writing of wills, providing in the first paragraph for the payment of expenses of last sickness,

funeral expenses, and all just debts, and a case in which the bequests and devises are specifically made subject to the payment of the above items. The case we have at bar falls within the first of the above provisions, as there is no provision in this will which makes the bequests and devises "subject" to the payment of debts. Such a provision, however, did exist in the Schultz case, supra. This distinguishes the holding in the Schultz case from the ordinary provisions like those in the first paragraph of the present will.

That this is the rule generally, see 29 C. J. p. 929, section 341.

A good illustration of this distinction will be found in the case of In re Estate of Caldwell, 204 Iowa 606, 215 N. W. 615. That case involved exempt property, as does this one. The will there provided, in item 1, a direction to pay all just and lawful debts of the testator, and the expenses of his last sickness, and burial, etc. Item 7 of the will provided:

"Subject to all the foregoing and to the payment of the costs and expenses of administration of my estate, I do hereby give, devise and bequeath all the rest, residue and remainder of my estate," etc.

In the Caldwell case we held that, because of this provision, the exempt property was subject to use for the payment of the testator's debts.

In the case of In re Estate of Guthrie, 183 Iowa 851, 167 N. W. 604, we had a case which was an exact parallel to the case under consideration. The decedent was not survived by a spouse and had surviving children. He had a homestead, which he was occupying at the time of his death, and the debt sought to be charged against the homestead was a debt against the decedent and arose after he acquired the homestead. We there held that the holder of such a debt could not subject the homestead to its payment.

This, without more, would be decisive of the question before us. But it is insisted that the case of In re Estate of Schultz, 192 Iowa 436, 185 N. W. 24, is in direct conflict with the case of In re Estate of Guthrie, 183 Iowa 851, 167 N. W. 604. We do not so read it. The major contest in the Schultz case was over the question of the sufficiency of the notice on the application to sell the real estate. In the Schultz case, as heretofore sug-

gested, there was, first, a specific provision that the bequests therein made were "subject to the payment of my debts"; and second, there was not such a distribution of the property as there would be under the law if there were no will. The Schultz case gave the wife $8,000 life insurance, and provided that the testator bequeathed his property to his six children, share and share alike, subject to the payment of his debts. Another distinguishing feature between the Schultz case and the Guthrie case lies in the fact that in the Guthrie case there was no surviving spouse, as there was in the Schultz case. If the will had not existed, this homestead property (there being no surviving spouse) would have passed to the children, free from the liability of the ancestor's debts.

■■■ Much attention is devoted in the arguments to what we have chosen to designate as the "worthier title" doctrine. This subject was reviewed by the writer of this opinion in the case of Luglan v. Lenning, 214 Iowa 439, 239 N. W. 692, where the rule is reiterated that the shares taken by the heirs must be exact as to quantity and quality in order to set in operation the "worthier title" rule; and if, as a matter of fact, in the application of this rule it is found that the shares taken by the heirs are not exact as to quantity and quality, then the heirs taking under the will are held to take by purchase and not by descent, and if they take by purchase, then their interest thus acquired is subject to levy by creditors. (Citing our former cases on this proposition.) While the above case cites the worthier title rule, the debt there claimed was not a debt created by the ancestor, but a debt or debts created by the beneficiaries under the will. In the application of this rule to the fact situation before us, the question narrows to the proposition of whether or not these beneficiaries under the will took the same identical interest in quantity and quality that they would have taken under the law. If they did, then the homestead is exempt as against the decedent's debt created after he acquired the homestead. Under the condition existing here, the deceased had six children; five of them were living and one was dead. The dead son, however, left two minors. This was the condition at the time the will was drawn and at the time of the testator's death. He divided his estate into six equal shares. He gave to each of his five living children one-sixth. The other one-sixth he gave to the two minor children of his deceased child.

This is the exact distribution of his estate that would have been made under the law had there been no will. It must therefore be held, so far as this question is concerned, that the homestead right passed to his children exactly as it would have done had there been no will, and, this being true, the homestead right still exists. However, the worthier title rule has no application whatever to the case before us.

By reply argument, however, the appellant insists that, by reason of the second paragraph of the will ordering the sale of all his property by the executors and turning it into money, this produces a different condition, and that the doctrine of equitable conversion applies, and therefore the beneficiaries do not take the property in the "quality" that they would take it under the law. We think this is rather hypercritical and without merit; but, be that as it may, no such question was raised by appellant in his opening argument, and, under the rules, he is not entitled to have the same considered.—Affirmed.

All Justices concur.