**In the Matter of the ESTATE of Earl Stanford WILLIAMS, Deceased.**

No. 2–56307.

Supreme Court of Iowa.

March 27, 1974.

 

Fairall & Fairall, Marshalltown, for appellants.

Korf, Diehl, Clayton & Cleverley and R. Eugene Knopf, Newton, for appellee.

Heard before MOORE, C. J., and MASON, LeGRAND, UHLENHOPP and REYNOLDSON, JJ.

UHLENHOPP, Justice.

In this appeal in a probate proceeding we must decide whether a farmstead of 40 acres is exempt from claims and charges against an estate.

Earl Stanford Williams (testator) owned and lived on a 260-acre farm (the farm) in Jasper County, Iowa, from 1902 until he died on July 9, 1968. His wife preceded him in death. He was survived by his insolvent son, Ward E. Williams (Ward), who with his own family lived with testator on the farm, and by two daughters, Mabel M. Ratcliff and Bernice L. Stitt.

Testator made a will containing gifts to Ward and the two daughters. The will also contained a five-year trust for Ward, the principal asset of which was the farm. The will directed the trustee of the trust to pay Ward the annual net income of the trust estate as well as such amounts of principal as required for Ward's support. It also directed the trustee, upon termination of the trust, to pay over the trust estate to Ward or, if he did not survive the trust period, to Ward's then surviving sons. (Ward did survive the trust period.) The will gave the trustee broad powers, including authority to possess, lease, mortgage, sell, and convey trust property. It named Ward as executor.

Following testator's death, the probate court admitted testator's will to probate and appointed Ward as executor, but the court did not appoint a trustee at that time. Ward continued to live on the farm. He operated it under leases approved by the probate court. Numerous proceedings occurred in the probate matter, but we will set forth only those which are relevant to this appeal.

Creditors of the estate filed claims substantially exceeding the value of the estate assets other than the farm. The claims were allowed.

In 1970 Bernice L. Stitt applied to the probate court for an order to terminate the lease of the farm to Ward and to sell the farm. On November 23, 1970, after hearing on notice, the probate court found that no homestead exemption existed as to estate debts and ordered Ward as executor to sell the farm to pay claims and charges against the estate. Also that fall, the probate court denied an application by Ward to renew the annual farm lease to himself. Ward appealed to this court from those orders, but other events occurred before he perfected his appeal. He did not sell the farm and remained in possession of it.

On March 2, 1972, after another hearing on notice, the probate court removed Ward as executor and appointed George L. Kling as successor executor. The court also appointed Homer Millspaugh as trustee of the trust established in the will, but directed the trustee to take no action until administration of the estate was completed. Ward appealed again.

While the second appeal was pending, Kling as successor executor applied for a writ of possession of the farm. Ward resisted. At a hearing on notice on March 31, 1972, the parties in interest entered into a settlement and stipulated inter alia that Ward and his wife thereby surrendered possession of the farm to Kling as executor, that Kling would lease the farm to Homer Millspaugh who would in turn sublease it, that "the previous orders of this court requiring the immediate sale of the real estate are regarded and treated as a

nullity for all purposes," and that Ward thereby dismissed his appeal from the order of March 2, 1972.

Kling accordingly leased the farm to Millspaugh, who subleased it to Ward, who thus remained in possession.

The probate proceedings then became entwined with proceedings in federal court. On January 29, 1973, alleging breaches of lease covenants, Kling applied to the probate court for a writ of possession of the farm and also for authority to sell the farm to pay estate debts and charges. On January 31, 1973, Ward petitioned the United States District Court (the bankruptcy court) to adjudge him bankrupt. That court did so and appointed a bankruptcy trustee of Ward's estate. On Ward's motion, on February 9, 1973, the bankruptcy court also enjoined the parties from taking proceedings in the probate court involving the farm. On February 15, 1973, the bankruptcy court modified the injunction to permit probate proceedings involving the farm but left the injunction in effect prohibiting Ward's own creditors from proceeding in the probate court against Ward's assets.

On February 19, 1973, Ward applied to the probate court to set off the farmstead of 40 acres as exempt. On March 23, 1973, after hearing on notice, the probate court terminated the lease to Millspaugh (including the sublease to Ward) and granted the successor executor a writ of possession, held that no exemption from estate debts based on homestead existed in the farm, and ordered the successor executor to sell entire farm. Ward again appealed—the present one.

Ward did not post a supersedeas bond in this appeal, and the successor executor sold the farm. By order, the rights of the parties in the farm were preserved in the sale proceeds.

In this appeal, Ward asks us to nullify the order for sale and the sale of the farm or to grant him the portion of the sale proceeds representing the value of the farmstead 40 acres, together with damages. His requests turn on the basic question of whether the 40-acre farmstead is exempt from claims and charges against testator's estate.

Because of different rules in various homestead situations, we pinpoint the facts. The 40-acre farmstead was unquestionably testator's homestead. Testator left issue but no surviving spouse. He was testate, and he devised his farm containing his homestead as part of a trust for one of his issue, Ward, or for Ward's surviving sons if Ward did not survive the trust period. In this probate matter, creditors of testator's estate, not Ward's creditors, are attempting to subject to their claims and charges the tract which was testator's homestead; the bankruptcy court has enjoined Ward's own creditors from proceeding in this probate matter against his assets. Testator's acquisition of the homestead antedated the claims and charges of the creditors of his estate.

We must first decide whether the 40 acres in question initially passed under the will exempt from estate claims and charges. If yes, we must decide whether the 40 acres became liable for those estate claims and charges by the order for sale entered on November 23, 1970, or by Ward's surrender of possession of the farm to the successor executor.

I. *Forty Acres Exempt Initially?* The answer to the first problem turns on the homestead statute and three decisions of this court.

■ While testator lived, the homestead was exempt from his debts incurred after its acquisition. Code 1973, § 561.16 ("The homestead of every family, whether owned by the husband or wife, is exempt from judicial sale, where there is no special declaration of statute to the contrary . . . ."). Had testator's wife survived him, she would have had statutory rights respecting the homestead. We need not consider the

extent of those rights, which are mainly to occupy the homestead for life or to take it as part of a distributive share. The statute also provides:

> Subject to the rights of the surviving husband or wife, the homestead may be devised like other real estate of the testator. § 561.14.

> If there be no survivor, the homestead descends to the issue of either husband or wife according to the rules of descent, unless otherwise directed by will. § 561.18.

> Where the homestead descends to the issue of either husband or wife the same shall be held by such issue exempt from any antecedent debts of their parents or their own, except those of the owner thereof contracted prior to its acquisition. § 561.19.

> The homestead may be sold to satisfy debts . . . [i]f there is no survivor or issue, for the payment of any debts to which it might at that time be subjected if it had never been held as a homestead. § 561.21(4).

The three decisions relevant to our problem are Swisher v. Swisher, 157 Iowa 55, 137 N.W. 1076, In re Estate of Guthrie, 183 Iowa 851, 167 N.W. 604, and Long v. Northup, 225 Iowa 132, 279 N.W. 104. (See also Note, 39 Iowa L.Rev. 473.)

In the Swisher case the testator devised his homestead to his wife. He was survived by her and by issue. Creditors of his estate claimed the homestead exemption was lost because the surviving spouse did not take either her statutory right to occupy the homestead for life or to have the homestead as part of her distributive share. But this court held otherwise, saying:

> The statute expressly provides that the homestead shall be devisable, but nowhere declares that its devise shall operate to destroy its quality of exemption. Much of the argument of appellees [creditors] proceeds upon an incorrect assumption of the position taken by the

plaintiff [widow]. She is not claiming the property under the statute which gives her an election between distributive share and the right of life occupancy. She claims the fee by virtue of the devise and the statute which makes it absolutely exempt except where otherwise specially provided. In this position we think she is sustained both by the letter and the spirit of the statute.

> The only statutory authority for subjecting the homestead of a deceased person to payment of the claims of general creditors is where the deceased leaves no surviving spouse and there is a failure of issue. Code [1897], §§ 2972, 2985, 2986 [now §§ 561.16, 561.18, 561.19, 561.-21, supra]. 157 Iowa at 72, 137 N.W. at 1082.

The court next decided In re Estate of Guthrie, 183 Iowa 851, 167 N.W. 604. Section 561.19 of the Code which we have quoted (then § 2985) provides that when a homestead "descends" to issue, it is exempt. · In Guthrie, the testator *devised* most of his property, including his homestead, to certain of his children. Creditors of his estate sought to subject the testator's homestead to their claims on the ground the children took by will rather than by descent. This court held for the children, saying:

> In the *Swisher* case [supra] we for the first time had occasion to consider whether the homestead exemption which is provided for the owner and his family against liability for his debts is lost simply because instead of leaving it at his death as intestate property he devises it to some or all of the members of his family, for whose protection the exemption is expressly provided. After a somewhat extended examination of the statute we answered the inquiry in the negative, and we see no good reason for now holding otherwise. The homestead right is carefully guarded by the express provision which makes it applicable in all cases "where there is no special declara-

tion of statute to the contrary." Code [1897], § 2972. There is a special declaration in Code, § 2986, which provides for the removal or extinction of the exemption when the ancestor dies intestate and there is *no surviving spouse or issue,* but the statute will be searched in vain for any express or necessarily implied provision giving any such effect to the act of the owner in devising the homestead, and especially is this the case where the devise is made to one whom the statute is intended to protect . . . .

[C]ases are very rare (if there be any) in which general creditors of a deceased owner, holding claims against him which accrued after the homestead was acquired, have asserted any right to subject it to payment of their demands, where it is conceded that the deceased owner left either a surviving spouse or issue. The lack of any precedents for sustaining such a claim is doubtless due to the explicit terms of the statute, which exempts the homestead of every family from judicial sale, where there is no special declaration of statute to the contrary (Code, § 2972), and preserves such exemption in favor of the surviving spouse and heirs (Code, § 2985). It is doubtless true that, except as against the rights of the surviving spouse, the owner may by will subject the homestead to the payment of his debts (Code, §§ 2985 and 2987), but in the absence of any such state of facts the statute provides but one condition under which the exemption with which the homestead is clothed will be removed and the property subjected to the payment of the general creditors of the deceased owner, and that is where he leaves "no surviving spouse or issue." Code, § 2986 . . . .

[A]ssuming the acquirement of a homestead by the debtor before the date of his indebtedness to a general creditor, and the death of such debtor leaving issue who take the title to the homestead by inheritance or by will or by deed

. . . such issue takes the title precisely as it existed at the owner's death, free from any charge or liability for the owner's debts—not because of any homestead right in the issue, but because of the homestead right and exemption which had been acquired by the ancestor. 183 Iowa at 853–854, 857–858, 167 N.W. at 605–606.

The court then decided Long v. Northup, 225 Iowa 132, 279 N.W. 104. There the testator was a widower. His mother-in-law had raised his son. The mother-in-law and the son survived the testator. The testator left his property including his homestead to his mother-in-law, but he stated in his will he did so "with the full understanding and knowledge that she will look after my son. . . ." This court held that the homestead was not liable for claims against the testator's estate.

■ From these decisions we distill the following principle. If a testator who owns a homestead and leaves surviving issue but not a surviving spouse devises his homestead to or for the benefit of one, some, or all of such issue, the homestead passes under the devise exempt from those debts of the testator from which it would be exempt in his hands as well as from claims and charges against his estate.

The present case fulfills the principle unless it is disqualified by the clause that Ward's rights under the trust terminated if he did not survive the five-year trust period. But the answer to this is that he did survive that period. Besides, had he not survived, the property would have gone to his surviving sons, who are likewise testator's issue. Rice v. Burkhart, 130 Iowa 520, 107 N.W. 308.

■ The estate creditors contend, however, that because the trustee had power under the will to sell the farm, testator's homestead did not pass exempt from estate debts. The thought seems to be that Ward must hold the tract as his own homestead, but the statute contains no such requirement. If the testator's homestead passes to

or for the benefit of surviving issue, it passes exempt from estate debts irrespective of what the issue may do with it. Indeed, if the will directs the testator's executor himself to sell the homestead and distribute the proceeds to the issue, the exemption from estate debts persists in the proceeds. Luckenbill v. Bates, 220 Iowa 871, 263 N.W. 811. Here testator's homestead passed for the benefit of his issue, Ward, or Ward's surviving sons, and the exemption from estate debts existed as to the tract of 40 acres and its proceeds. We do not intimate whether or not the 40-acre tract was Ward's homestead or was exempt from his debts. That problem will undoubtedly be taken up in the bankruptcy court.

We hold that the homestead initially passed under the will exempt from claims and charges against testator's estate.

■ II. *Effect of Subsequent Events.* Did Ward lose the 40 acres to estate creditors (a) by the order for sale entered on November 23, 1970, or (b) by his surrender of possession of the farm to the successor executor? Actually Ward did not hold legal title, but his right as beneficiary was at least voluntarily alienable. Flanagan v. Spalti, 225 Iowa 1231, 282 N.W. 347; Swenson, Possessory Estates and Future Interests in Iowa, 36 I.C.A. 73, 96; Restatement, Trusts 2d, § 132.

(a) On November 23, 1970, the probate court adjudged on notice and hearing that the farm, which included the homestead, was not exempt from estate debts and ordered the executor to sell it.

Ward, who was then executor, did not sell the farm. Subsequently the court replaced him as executor, the successor executor applied for a writ of possession of the farm, and at a hearing on that application the parties stipulated the previous orders for sale "are regarded and treated as a nullity *for all purposes.*" (Italics added.)

■ In view of that stipulation, the order of November 23, 1970, does not consti-

tute an adjudication that testator's homestead is liable for estate debts. 49 C.J.S. Judgments § 281 at 510 ("where the parties enter into an otherwise valid agreement for the vacation of a judgment such agreement is binding and enforceable"); 46 Am.Jur.2d Judgments § 465 at 633 ("A judgment is inoperative as res judicata where it has been vacated").

■ (b) As part of the same settlement, Ward surrendered possession of the farm (although he in fact continued to occupy it, as subtenant). He had no basis to retain possession of the 220 acres of the farm which were not testator's homestead. But the other 40 acres Ward beneficially owned clear of estate debts. Before those 40 acres would be subject to estate debts, Ward would have to perform some act intending to subject them to such debts—in the same manner as if he were subjecting some other tract of his to the debts of his father's estate. Did his surrender of possession of the farm constitute such an act with such intent? We think not, for he could cease to *possess* the 40-acre tract and still *own* it clear of estate debts. As stated in Johnson v. Gaylord, 41 Iowa 362, 367, "There is no provision in the statute requiring the property to be occupied by the heir as a homestead, in order to protect it in his hands from the debts of the estate." In the Johnson case the decedent's issue was not only out of possession but out of the state. In addition, this court has quoted with approval the rule that " 'All presumptions are in favor of preservation and retention of the homestead.' " In re McClain's Estate, 220 Iowa 638, 644, 262 N. W. 666, 670. We hold that Ward did not lose the 40 acres to estate creditors as a result of events subsequent to testator's death and that the probate court should not have ordered sale of the 40 acres in question.

■ Since, however, Ward did not file supersedeas bond when he appealed, the executor sold the farm and the court transferred the parties' rights to the proceeds.

Under such circumstances the sale should not be set aside, but the proceeds of the sale of the 40 acres pass to Ward free of estate debts and charges. The matter must be returned to the probate court for an appropriate order accordingly. Presumably the bankruptcy trustee will act concomitantly so that the bankruptcy court may adjudicate with respect to those proceeds as to Ward's creditors.

Ward has not proved damages in this probate proceeding and is not entitled to any.

The parties have not presented to us the question of any liability of the 40 acres for mortgages or, in the event of such liability, the question of marshaling assets. We do not consider those problems.

Reversed.