[Civil No. 3180.   Filed June 6, 1932.]

[11 Pac. (2d) 950.]

LOUIS PROTO, as Administrator of the Estate of ANTONIO PROTO, Deceased, Appellant, v. W. F. CHENOWETH, Appellee.

Messrs. Duffy & Robins, Messrs. Stockton & Perry and Mr. E. G. Frazier, for Appellant.

Messrs. Conner & Jones, for Appellee.

ROSS, J.—Dr. W. F. Chenoweth rendered to Antonio Proto, deceased, in his lifetime services as a physician. In due time he presented his claim to the administrator for allowance, who rejected it. Suit was thereafter brought, and the claim reduced to judgment. This proceeding in probate has for its purpose the determination whether such services were expenses of the decedent's last sickness and entitled to be preferred. The judgment recites what was claimed, what was rejected and what was allowed, as follows:

"That during the period June 1921 to and including the month of October 1923, excluding the month of August 1922, for which period plaintiff claims to have rendered professional services as physician and surgeon to the defendant's testator Antonio Proto at the rate of $500.00 per month, the plaintiff rendered the decedent no professional services as claimed by him during the months of August, September, October and November, 1921, and the months of April, May, September, October, November and December, 1922, and the months of January, March, April, May, June, August and September, 1923; that during the years 1921, 1922 and 1923 plaintiff did render the said deceased Antonio Proto professional services as physician and surgeon in the months and of the reasonable value as follows:

| | |
|---|---|
| June 1921 | $450.00 |
| July 1921 | 475.00 |
| December 1921 | 420.00 |
| January 1922 | 450.00 |
| February 1922 | 500.00 |
| March 1922 | 500.00 |
| June 1922 | 500.00 |
| July 1922 | 480.00 |
| February 1923 | 500.00 |
| July 1923 | 500.00 |
| October 1923 | 500.00 |

making a total of $5,275.00 which the Court finds to be the reasonable value of the professional services as physician and surgeon rendered by the plaintiff to the deceased Antonio Proto during said period."

It will be noted that the claimant's demand extends from June 1, 1921, to and including October, 1923 (excepting only the month of August, 1922); that the court found that the services therein rendered were not continuous, but that from July 1, 1921, to December, 1921, he rendered no services, a lapse of four months; that the first, second, third, sixth and seventh months of 1922 he attended Proto, but did not attend him during the fourth, fifth, eighth, ninth, tenth, eleventh or twelfth months of that year; that he ren-

dered Proto services in 1923 during the months of February, July and October only.

During all these times they resided in the same community, Nogales, Arizona. The latter part of November, 1923, Proto went from Nogales to Los Angeles, and on January 3, 1924, died in that city.

The right to preference depending, as it does, upon whether the claimant's services were rendered during the last sickness of Proto, the evidence at the hearing of the petition was directed to that point. The claimant in June, 1921, diagnosed Proto's ailment as carcinoma of the prostate, and thereafter treated him at intervals for that disease until his professional services ceased, in October, 1923.

The administrator offered evidence to the effect that Proto did not have carcinoma of the prostate, but that he did have sarcoma of the stomach, which was the cause of his death. The medical experts were not in agreement as to whether Proto died from carcinoma of the prostate and its metastasizations, or from sarcoma of the stomach as a primary disease.

Proto was eighty-one when claimant began to treat him and eighty-four when he died. During all this time he was afflicted with the infirmities of old age, such as myocarditis and arteriosclerosis. Whether Proto was up and around, looking after his business or bedridden, from June, 1921, the record is silent, except it does show that in November, 1923, after he went to Los Angeles, he was not confined to his bed, but was able to take daily automobile rides, and for two or three weeks made no complaint of pain. About December 20th he began to suffer intense pain in his stomach and to have violent vomiting spells. He went to bed, where he remained until he died. The immediate cause of his pain and vomiting and death was a sarcoma of the stomach. That he had periods sometimes extending over several months when he needed no medical attention and received

none, at least from Dr. Chenoweth, is evidenced from itemized services as reflected in the quoted part of the judgment.

The trial court found as a fact that claimant's services were rendered to Proto "during his last illness," and directed that his demand be paid as a preferred claim. The administrator has appealed, and contends the court's finding is erroneous, in that there is no evidence to sustain such finding or the judgment based thereon.

The expenses of the last sickness were not preferred at common law. They are purely statutory. Our provisions in that regard are found in sections 4068 and 4069 of the Revised Code of 1928. By these sections "the expenses of the last sickness" are preferred to all others, except funeral expenses. Falling within the category of expenses of the last sickness are charges of physicians, nurses, medicines, etc. The difficulty under statutes like ours has been to determine whether the services were rendered or the medicines were furnished during the patient's last sickness. So far as we can find, the only authority that has undertaken to give a general definition of the phrase "the last sickness" is Corpus Juris, in volume 24, at page 426, section 1167, which is as follows:

"The last illness within the meaning of a statute, giving preference to the expenses thereof, is the illness which terminated in the patient's death and the right to a preference is limited to services performed and expenses incurred during that illness, but unless the period is designated by statute, no particular period preceding death can be fixed as constituting the last illness, as the duration of such illness must vary considerably according to the nature of the disease and the condition of the patient. Such a statute must, however, be liberally construed, and the expression cannot be limited in meaning to the period during which decedent was *in extremis;* but on the

other hand it relates to the proximate, and not the remote cause of death, and a claim for medical attendance cannot be made to cover a long period during which the patient lingered, partially convalescent, the attendance being broken off during the convalescent period and then renewed on decedent's relapse, especially where there had been a change of physicians.''

Although the phrase is quite common in the statutes of the different states, there are not many cases from the highest courts construing it. The Corpus Juris definition seems to be a compilation of practically all the decisions theretofore rendered, and our reading of such decisions convinces us that the author therein has given the phrase the meaning and application that the courts generally have.

The facts in the present case are very different from anything that we have been able to find. To allow a physician purposely or negligently to postpone collecting for his services until after his patient is dead, even though the patient during much or all of the time was able to be up and around and transact business, is giving the phrase a rather more liberal meaning than was ever intended, we apprehend. We may suppose that one of the actuating reasons for the enactment of this law was to assure the sick patient proper medical care and attention during the period of his sickness, when he is more or less incapable of looking after business affairs, and at the same time assure his physician that he will be compensated for his services. During such period, whether a few days or many months, the physician has the assurance of the law that his services will be paid, if there is anything left of the estate after the funeral expenses are paid.

It is inconceivable that the legislature intended that the physician should permit his claim for services, calculated on a monthly basis rather than visits made,

to run over a period of two or three or more years, and then, after his patient is dead, have a preference for the entire amount. Practically and actually we know that persons, even though sick, attend to their business affairs, and at stated intervals, just as well persons do, demand and render accounts and make settlements. Sick persons often continue to do business, even though under the care of a doctor. Especially is that true of tuberculars or victims of cancer. They frequently experiment with different physicians. Because finally they die from tuberculosis or cancer is every one of such physicians entitled, regardless of the time of his service, to be preferred out of the patient's estate? It seems to us that the reasonable meaning of the phrase precludes, or should preclude, a physician from making claim to a preference, even though his treatment was for the same disease of which the patient finally died, if and when his services are not continuous, but occasional, with long intervals of discontinuance unexplained, and especially when the patient at the time of his death has severed the relation and employed another to look after him.

While the record discloses that, during the time Dr. Chenoweth attended him, Proto was an old man, afflicted with the infirmities of old age, as also cancer of the prostate, it is not shown that he was bedridden or unable to go and come and look after his affairs until after he went to Los Angeles. Two or three weeks after his arrival there he began to suffer intense pain in his stomach and went to bed, where he remained until he died. The cause of the pain and his confinement to bed and of his death was unquestionably a sarcoma of the stomach. It is true the claimant and his experts testified that the latter cancer was, or might have been, caused by the carcinoma; but, even if that be so, we think under the decisions Proto's last sickness dates from the

time he became permanently stricken with the sarcoma. That was "the illness that terminated in the patient's death." The term "last sickness" is not elastic enough to cover all those ills to which old age is heir, but picks out that particular illness which terminates in death. The patient may have cancer, or tuberculosis, or Bright's disease, but, if he is up and around attending to his affairs and is taken sick and dies of pneumonia, his "last sickness" is pneumonia, in the statutory sense.

There is no reason for preferring doctors' bills accruing prior to the last sickness, or the sickness that terminates in death. Any services rendered by a doctor prior to such sickness, in reason, should have no preference over the lawyer for professional services, the grocer for food, or the butcher for meat, or the clothier for clothes, and we will not extend the statute beyond the reason for it. If the claimant's demand is to secure preference, then the Nogales druggist who furnished Proto drugs for the carcinoma and its distempers, and the nurse, if any, who nursed him during such sickness, could likewise claim preference, even though Proto was later stricken with sarcoma and died thereof in another state, under the care of a different doctor, nurses, etc. The preference is not a general one in favor of physicians, but one limited to services rendered during the patient's last sickness only.

It seems to us the court's finding that Dr. Chenoweth's services were rendered to Proto in his last illness (sickness) is not supported by the evidence, and that the judgment is contrary to the evidence. The claim must take its place with the general creditors.

The judgment of the lower court is reversed and the cause remanded, with directions to deny the preference sought.

McALISTER, C. J., and LOCKWOOD, J., concur.