RANDY LONG, Appellant, v. F. E. NORTHUP et al., Appellees.
No. 44078.

APRIL 5, 1938.

E. N. Farber and R. A. Rockhill, for appellant.

Boardman & Cartwright, for appellees (except F. E. Northup).

SAGER, J.—Appellant and Neven Long, Sr., were brothers. During the lifetime of the latter the former advanced moneys, which advances were the subject of consideration in the trial below.

Neven long, Sr., was injured in May 1935, while engaged in employment which brought him within the provisions of the workmen's compensation law. His claim was commuted and the proceeds form a part of the subject of contention here. Before the settlement of the workmen's compensation claim, Long, Sr., had treatments at an osteopathic hospital in Missouri. These treatments began on October 1, 1935, and continued until February 1936. To pay for them claimant-appellant advanced $230.98, taking a note for that amount, dated October 31, 1935, payable a year later. Appellant insists that the moneys so advanced constitute a part of the expense of the "last sickness" of Long and should have been allowed as a preferred claim. The trial court refused to take this view and complaint is here made of such ruling. After Long, Sr., returned to Marshalltown, he received treatments from one Dr. Gordon during the months of November and December 1935, and in January and February 1936. For these treatments appellant advanced, apparently on his own motion, $80, taking the doctor's receipts therefor. That the trial court declined to allow this as an expense of "last sickness" is made the basis of further complaint on this appeal. Another item is for $50 for money expended by appellant for repairs on the residence of the decedent. A demand for preference for moneys advanced to pay funeral expenses completes the various items which went to make up appellant's claim. The

trial court gave preference to the item of funeral expenses, and allowed the other items as third-class claims. From this ruling, and the further one refusing to apply workmen's compensation money and the homestead to the payment of these claims, claimant appeals.

The rulings with reference to the allowance of funeral expenses and the refusal to give a preferred relation to moneys advanced for repairs, are so self-evidently sound as to call for no further attention herein. Neither do we think there was error in the court's ruling with reference to the $80 advanced on claimant's own motion to pay Dr. Gordon for services terminating three months before the death of Neven Long, Sr.

We have, then, the question whether moneys advanced for treatments in Missouri come within the terms of section 11969 of the Code, which directs that as soon as possessed of sufficient means the executor or administrator shall "pay off the charges' of the last sickness" of the deceased. While the question is not free from difficulty, we are satisfied that the trial court was right in holding that they did not.

We do not find that the question has ever been decided in this court, but it has been the subject of much discussion in other jurisdictions. In most of the states the question has arisen over the validity of nuncupative wills, which, by the statutes of the different states, are valid only when made during the "last sickness" of the testator. Because of the importance of the question we have given it considerable attention and have extended this opinion beyond what it perhaps should otherwise be. The fact that the testator changed medical attendants, while not controlling, is accepted by some of the courts as having some bearing on the question whether the treatment was during the last sickness.

24 Corpus Juris, Title, Executors and Administrators, section 1167, at p. 426, seems to comprehend the general rule deducible from the authorities there cited and such later ones as we have been able to discover. We quote:

"What constitutes last illness. The last illness within the meaning of a statute, giving preference to the expenses thereof, is the illness which terminated in the patient's death and the right to a preference is limited to services performed and expenses incurred during that illness, but unless the period is

designated by statute, no particular period preceding death can be fixed as constituting the last illness, as the duration of such illness must vary considerably according to the nature of the disease and the condition of the patient. Such a statute must, however, be liberally construed, and the expression cannot be limited in meaning to the period during which decedent was in extremis, but on the other hand it relates to the proximate, and not the remote cause of death, and a claim for medical attendance cannot be made to cover a long period during which the patient lingered, partially convalescent, the attendance being broken off during the convalescent period and then renewed on decedent's relapse, especially where there had been a change of physicians.''

The Supreme Court of Kansas, in Baird v. Baird, 70 Kan. 564, 79 P. 163, 68 L. R. A. 627, at p. 632, 3 Ann. Cas. 312, engages in a very interesting and instructive discussion of the subject, which we do not now stop to quote.

Along the same lines and pointing out the conflict of opinion which exists on the subject, the Supreme Court of Washington, in Re Estate of Miller, 47 Wash. 253, 91 P. 967, 13 L. R. A. (N. S.) 1092, at p. 1095, 125 Am. St. Rep. 904, 14 Ann. Cas. 1163, further elucidates the difficulty the courts have had in dealing with the subject.

While not strictly in point, we believe that the case of Proto v. Chenoweth, 40 Ariz. 312, 11 P. 2d 950, at p. 952, examines and analyzes the principles that should be applied. This being the latest of the cases that our own research has brought to our attention, we quote at some length:

''The facts in the present case are very different from anything that we have been able to find. To allow a physician purposely or negligently to postpone collecting for his services until after his patient is dead, even though the patient during much or all of the time was able to be up and around and transact business, is giving the phrase a rather more liberal meaning than was ever intended, we apprehend. We may suppose that one of the actuating reasons for the enactment of this law was to assure the sick patient proper medical care and attention during the period of his sickness, when he is more or less incapable of looking after business affairs, and at the same time assure his physician that he will be compensated for his services.

During such period, whether a few days or many months, the physician has the assurance of the law that his services will be paid, if there is anything left of the estate after the funeral expenses are paid.

"It is inconceivable that the Legislature intended that the physician should permit his claim for services, calculated on a monthly basis rather than visits made, to run over a period of two or three or more years, and then, after his patient is dead, have a preference for the entire amount. Practically and actually we know that persons, even though sick, attend to their business affairs, and at stated intervals, just as well persons do, demand and render accounts and make settlements. Sick persons often continue to do business, even though under the care of a doctor. Especially is that true of tuberculars or victims of cancer. They frequently experiment with different physicians. Because finally they die from tuberculosis or cancer is every one of such physicians entitled, regardless of the time of his service, to be preferred out of the patient's estate? It seems to us that the reasonable meaning of the phrase precludes, or should preclude, a physician from making claim to a preference, even though his treatment was for the same disease of which the patient finally died, if and when his services are not continuous, but occasional, with long intervals of discontinuance unexplained, and especially when the patient at the time of his death has severed the relation and employed another to look after him."

See, also, McLean v. Breen, Tex. Com. App., 219 S. W. 1089; 9 A. L. R. 459, and note.

In line with the deductions we make from the principles announced, we hold that the trial court was not in error in rejecting appellant's claim for moneys advanced for medical treatment as being expense of the last sickness of Neven Long, Sr.

On May 30, 1936, Long died, leaving a will which was duly admitted to probate and which, so far as needs attention here, was as follows:

"First. It is my will and I hereby will and direct that upon my demise there shall first be paid from the estate of which I die seized all my just debts, including those of my last illness, burial, and expense of administration.

"Second. It is then my will and I hereby will and bequeath to my motherinlaw, Margaret Lewis, all of the property of which

I die seized, of whatsoever kind and nature and wheresoever situate, to be her own absolutely and forever. I do this with the full understanding and knowledge that she will look after my son, Neven Long, Jr. as fully and completely as I would have done and I do this knowing that she, though the grandmother of my son Neven Long, Jr. is by adoption his mother and that she has during the time since the demise of my wife, looked after and cared for said child as his mother would have done. It is my natural desire that all of my property be used for the purpose of caring for my son. In the event of the death of Margaret Lewis prior to my demise, then and in that event it is my will that all of my property of whatsoever kind and nature and wheresoever situate, is to become the property of Neven Long, Jr. my son, to be his own, absolutely and forever."

The first question presented with reference to the terms of this will is whether the language of the first division has the effect of subjecting the property of the estate to all claims properly allowed, as against the second provision of the will directing the disposition of the corpus of the estate. Appellant contends that the language of the first provision, that "there shall be first paid from the estate * * * all my just debts", has that effect. The lower court, being of a different opinion, ruled against this contention, and in so doing we think the trial court was right.

Language in the will considered in Luckenbill v. Bates, 220 Iowa 871, at p. 874, 263 N. W. 811, 813, 103 A. L. R. 252, seems to be directly applicable, and we quote:

"Appellant first insists that, because of the first provision of the will, to wit, that the executors are directed to pay all just debts and funeral expenses, the creditors are given priority, and that the debts must be paid before any of the other provisions of the will can be carried out. It seems to be the general rule that mere phrases of this character in a will are not sufficient to give the debts priority. [Citing cases.] To make the devise subject to the payment of the testator's debts, the language must be unequivocal and imperative. See cases just cited. When a will provides, as most wills do, that the executor shall pay the just debts and funeral expenses, it merely recites the duty which every executor or administrator would have under the law; so we do not think that this direction here is more than

a mere formality, or that it has the force and effect as claimed by the appellant.'' [Citing cases.]

Appellant next urges that the homestead of the testator, because of the provisions of the second division of the will, was subject to the debts of the estate; or, to state it differently, the homestead character was lost by the terms of the devise made thereof by Neven Long, Sr. The question thus presented is one of considerable difficulty. It appears to the writer of this opinion that there will be found in our cases expressions upon one side or the other of this controversy which cannot be reconciled. We are therefore under the necessity of adopting that rule which seems to be most consistent with views generally announced appertaining to the character of the homestead itself and its proper disposition upon the death of the owner.

In adopting this view we can do no better than to quote the language of Weaver, J., in In re Estate of Guthrie, 183 Iowa 851, 853, 167 N. W. 604, 605:

"There is a special declaration in code section 2986 [sec. 10155, Code 1935] which provides for the removal or extinction of the exemption when the ancestor dies intestate and there is *no surviving spouse or issue*; but the statute will be searched in vain for any express or necessarily implied provision giving any such effect to the act of the owner in devising the homestead; and especially is this the case where the devise is made to one whom the statute is intended to protect. The owner could have conveyed it in his lifetime to the same persons named in his will, and they could maintain their title free from the claims of his creditors, though not free from the claims of their own creditors; and if there be any good reason in the statute, or outside of it, for making his devise any less effective than his deed, it is certainly not apparent. There are no appealing or persuasive equities in favor of appellants which should lead the course to seek an excuse for sustaining their claim. The credits were extended to the deceased after his homestead rights had been acquired. The creditors cannot say they trusted him on the strength of his ownership of this property, which they knew the law exempted; and they are not wronged, either in a legal or a moral sense, in denying them recourse upon the homestead. In the language of the Kentucky court:

" 'The owner of a homestead has power, under the statute,

to convey, by deed, and pass a good title to the property. * * * We see no reason why he may not do practically the same thing by will, because his creditors are prejudiced in one state of the case no more than the other; in fact, they are not wronged in either; but, in both, the object of the law, which is to secure to every housekeeper with a family, the certain and uninterrupted enjoyment of a homestead, is accomplished.' Myers' Guardian v. Myers' Admr., 89 Ky. 442, 446, 12 S. W. 933. See Pendergest v. Heekin, 94 Ky. 384, 22 S. W. 605.

"The same rule is affirmed in Eckstein v. Radl, 72 Minn. 95, 75 N. W. 112. Again, the statute provides that, subject only to the rights of a surviving spouse, the owner of a homestead may devise it by will, like other real estate. Code section 2987 [sec. 10148, Code 1935]. In other words, subject to the right of the surviving spouse (which is a right of occupancy only), the owner of the homestead may devise it to whom he pleases, just as, with the consent of the spouse, he may sell and convey it or give it away in his lifetime. In neither case do the creditors suffer wrong, nor is the property thereby exposed to seizure for payment of their claims. [Citing cases.] Our statute, which makes the homestead devisable by will [Code section 2987 (section 10148)] does not, even by indirection, suggest that such a devise is subject to claims of creditors against whom the homestead right had been acquired. It does make such devise subject to the right of the surviving spouse, and the expression of this one condition alone implies the exclusion of all others."

As having some bearing, see, Southwick v. Strong, 218 Iowa 435, 255 N. W. 523.

The language used in the Schultz case, 192 Iowa 436, 185 N. W. 24, merely pointed out that the property passed by will, making it subject to the payment of debts, and not by descent, in which case it would not have been subject to the payment of debts.

We have next for disposal the question whether the fund derived from the workmen's compensation law is subject to debts of Neven Long, Sr. The trial court held that it was not, and herein we think is error.

The record discloses that at the time of the death of Long, this fund, which was the result of a commutation settlement, was in the hands of Long's attorney, Northup, by whom it was

held to await the adjustment of some claim for medical services. To all intents and purposes the fund was in as complete control of Long as if it had been in his actual physical possession, and we pass upon the question in that view. Neither the briefs of the parties nor independent investigation disclose, either in this jurisdiction or any other, a case which casts much light upon it. While there are decisions in other states more or less directly upon the subject, they afford no help because of the differences of opinion existing therein. This is due mostly, if not entirely, to the variant wordings of the compensation statutes in the different states. We are, therefore, under the necessity of reaching such conclusion as seems to be called for by our own statutes.

Code section 11766 reads as follows:

''Workmen's compensation. Any compensation due or that may become due an employee or dependent under the provisions of chapter 70 shall be exempt from garnishment, attachment, and execution.''

The intent of the legislature, in the absence of previous construction of its enactments, must be determined both from the language used and the purpose of the legislation. We are not called upon to determine whether the avails of workmen's compensation would have been exempt in the hands of the injured workman, because that question is not here; but assuming, without deciding, that they were, we find no statute which would enable the workman to transfer this exemption after his death. In this declaration we have not overlooked section 1389 of the Code, having to do with liability in case of no dependents. This statute has no bearing on the question before us, and needs no attention beyond mention at this time.

Another, and the last, ground of complaint which will have attention here is that the court erred in refusing the profert of the testimony of Northup, the attorney who attended the matter of collecting the money due deceased under the workmen's compensation law. The rule against confidential communications is sought to be avoided by the claim that Northup was acting as attorney for both appellant and deceased. This cannot be admitted under the record, and the court was not in error here. It does appear that appellant consulted Northup with reference to the matter, and asked the attorney to see if there was a legal claim. He did disclose, too, that he had a

demand against his brother which could not be paid except out of compensation money. Appellant's contention in this regard required a construction of the evidence which was so far-fetched that the trial court rightly declined to make it.

From what has been said it follows that the decree of the trial court should have subjected the compensation money to the payment of all the approved debts of the estate of Neven Long, Sr., in their order of priority. In all other respects the rulings of the trial court are affirmed. Since the record does not disclose whether there be claims other than those of appellant, we are under the necessity of sending the case back to the trial court for such orders as will apportion the workmen's compensation and any other property that may be available to the payment of all claims allowed in the order of their priority.

The case is, therefore, affirmed in part; reversed and remanded in part.

DONEGAN, ANDERSON. RICHARDS, MITCHELL, and HAMILTON, JJ., concur.