MURPHY, APPELLEE, *v.* LANGA, ADMX., APPELLANT.

(Decided June 5, 1939.)

*Messrs. Openlander & Jacobson* and *Mr. Clarence A. Day,* for appellee.

*Mr. Benjamin B. Moses,* for appellant.

LLOYD, J. Mayme Przbylski, also known as Mayme Jahny, died intestate, of cancer, on March 27, 1937. On April 20, 1937, Martha Edna Langa was duly appointed administratrix of the decedent's estate consisting of $690.28, the proceeds of two insurance policies.

Thereafter Dr. Murphy, the appellee herein, filed with the administratrix proof of claim in the sum of $225 for medical services rendered the decedent for the malady with which she was afflicted and of which she died, asserting that his claim was an expense of the last sickness of decedent and therefore to be preferred under subdivision 1 of Section 10509-121, General Code. This claim was allowed as a general claim in the schedule of debts filed by the administratrix in Probate Court; by reason whereof the claimant, Murphy, filed exceptions thereto. Upon hearing thereof, the Probate Court found the exceptions were well taken and that the claim should be preferred and allowed it as such. The trial on appeal to the Court of Common Pleas resulted in a verdict and judgment for the claimant. The administratrix appeals to this court on questions of law, enumerating nine errors, alleged as requiring a reversal of the judgment and an entry of judgment in her favor. The sum and substance of them all is that the alleged claim is a general claim only against the decedent's estate because none of the professional services to which it relates was an expense of the last sickness of the decedent.

The facts in evidence are not in dispute. The decedent first went to the office of Dr. Murphy on March 1, 1935. Upon examination, he discovered that she was suffering from a fourth degree cancer for which thereafter, until March 18th, he treated her daily except on Sundays. On the 19th, treatment thereof was impossible because of the general condition of the de-

cedent. On the 25th of March, however, another treatment was given, after which examinations only were made until April 29th, when, her general condition having somewhat improved, an anaesthetic was administered and a radium treatment given at the hospital where she had been taken. She was at the hospital for about a week, after which she again went to the office of the doctor on July 5th, July 12th and August 12th for examination only, or treatment if expedient or necessary. She failed to keep a September 13, 1935, appointmnt. Dr. Murphy did not see her again until July 6, 1936.

She had been an employee of The Acklin Stamping Company as a punch press operator and returned there to her work on August 27, 1935, from which date "until December 31, 1935, she put in full time at the plant" according to the records of the company "based on the hours, 40-hour week." She worked three weeks in January, 1936, all of February, March, April and May and three days in October of that year, and according to the employment manager of the company the decedent, when there was work, had worked all of 1935 after August. According to the administratrix who was a witness, the decedent during this time also performed her usual duties "of a housewife and mother." On July 6, 1936, she again went to Dr. Murphy's office and also on July 28th, September 22nd, October 2nd and on October 28th, "when her condition warranted some treatment." Thereupon she was given daily treatments, excepting on Sundays, until November 3, 1936. Treatments were administered also on November 5th, 6th, 9th and 10th, and she was at the doctor's office for observation on November 14th. She was to have returned on November 18th, but did not do so. From that time until her death, she was attended at her home by a Dr. Singer, apparently for

the reason that Dr. Murphy gave treatments for cancer only at his office or at a hospital.

In so far as applicable, Section 10509-121, General Code, reads as follows:

"Every executor or administrator shall proceed with diligence to pay the debts of the deceased, applying the assets in the following order:

"1. Bill of funeral director not exceeding three hundred fifty dollars, such other funeral expenses as are approved by the court, the expenses of the last sickness and those of administration."

Is the claim of Dr. Murphy or any part thereof, an expense of the last sickness of the decedent within the meaning, intent and purpose of the foregoing legislative enactment?

Referring to the hereinbefore narrated facts, he first treated her at his office on March 1, 1935, and thereafter until August 12, 1935. Without further medical attendance or treatment, the decedent worked at her usual factory occupation for the time hereinbefore stated and did not again consult Dr. Murphy until July 6, 1936. Although there is no question but that the disease of which the decedent died was that for which Dr. Murphy first examined and treated her, it would not seem that the statute intended that the term "last sickness" should cover services rendered prior to the interim when she ceased to be his patient. There was no obligation upon her to have reemployed him, nor would it seem that ethical considerations would have prevented other physicians from attending her professionally, had she then chosen to consult them. If the pre-return-to-work services are expenses of the last sickness of the deceased, then, had Dr. Murphy treated her on March 1, 1935, only, and thereafter she had consulted and been treated by other physicians, or had not consulted or been treated further by anyone, despite the lapse of time from March 1, 1935, to the

date of her death, March 27, 1937, the uncompensated services rendered on that one date would be preferred under the statute.

If the statute were so construed, then, unless the statute of limitations intervened, a claim for medical services rendered in a first and only examination and treatment of a patient for an incurable disease of which ultimately many years afterward he died, would be preferred over those of general creditors and would pro rate with other in fact preferred claims. This does not seem a reasonable interpretation of the statute.

As said in *Long* v. *Northup*, 225 Iowa, 132, 279 N. W., 104: "The intent of the Legislature, in the absence of previous construction of its enactments, must be determined both from the language used and the purpose of the legislation." In its opinion, the court quotes with approval from 24 Corpus Juris, 426, Section 1167, and other authorities, among which is *Proto, Admr.*, v. *Chenoweth*, 40 Ariz., 312, 11 P. (2d), 950, wherein it is said:

"* * * Sick persons often continue to do business, even though under the care of a doctor. Especially is that true of tuberculars or victims of cancer. They frequently experiment with different physicians. Because finally they die from tuberculosis or cancer is every one of such physicians entitled, regardless of the time of his service, to be preferred out of the patient's estate? It seems to us that the reasonable meaning of the phrase precludes, or should preclude, a physician from making claim to a preference, even though his treatment was for the same disease of which the patient finally died, if and when his services are not continuous, but occasional, with long intervals of discontinuance unexplained, and especially when the patient at the time of his death has severed the relation and employed another to look after him."

The above quotation aptly expresses the reason for the conclusion at which this court has arrived, viz.: that Dr. Murphy is entitled to have allowed as a preferred claim the reasonable value of the services rendered by him to the decedent on and after July 6, 1936; and although, because there is no factual dispute as to the nature of the professional services rendered by Dr. Murphy or the reasonable value thereof, the question at issue as presented in the record now before this court is one of law, yet since it does not appear what proportion of the amount claimed was for services rendered on and after July 6, 1936, to show which the petition of appellee should be amended, the judgment of the Court of Common Pleas must not only be reversed but the cause must also be remanded thereto for further proceedings according to law.

*Judgment reversed and cause remanded.*

CARPENTER, J., concurs.

OVERMYER, J., dissenting. The statute (Section 10509-121, General Code) does not provide that time shall be the determining factor, or even a determining factor, in deciding whether medical services were or were not rendered in and during the last sickness of a decedent. Assuming the Legislature could fix a limitation of time, it has not done so. In some states, in statutes with a similar purpose, a time limit has been fixed.

It appears to me such arbitrary fixing of a time limit would not be a fair test, for what constitutes a "last sickness" would depend upon so many conditions—the nature of the disease, its malignancy, the resistance of a patient to the particular disease, the patient's age and general physical condition, his response to treatment, his willingness to co-operate and many

other conditions. In any event, under our statute the test must be, were the services rendered to decedent in his or her "last sickness," the sickness from which he or she died?

There is no dispute that the decedent was treated by appellee for cancer of the cervix of the uterus during all of his treatment of her. There is no dispute that she died from cancer of the cervix of the uterus. It is not claimed she was ever free from cancer of the cervix of the uterus from the time appellee first began to treat her for that disease until she died from it, even though she had at times improved sufficiently to work intermittently. It is not claimed, and in view of the medical evidence could not well be, that she was ever free from the same cancer during any of that period. Appellee is a specialist in his line and cannot move his cumbersome and delicate electrical and other equipment from house to house. Decedent knew this when he was engaged and she came to his office when she could. When she no longer could come to his office he could not move his equipment to her home, but he had treated her from the beginning of his service for her last sickness, the sickness from which she died. While appellee treated her, she had no other doctor, and he apparently was willing and ready to continue treatments so long as she could come. He had engagements for her which she did not keep.

It is my view that in cases under this statute the particular facts of each case must determine the preference to be given to medical bills for services rendered a decedent in his or her last sickness, and on the record before us I think appellee's bill comes fairly within the definition in the statute, "expenses of last sickness"—the only definition that could reasonably be used, and to be applied largely within the wisdom and discretion of the Probate Court, considering the nature of the disease and all other circumstances.

I am particularly not in sympathy with the theory advanced in argument and suggested in some decisions cited, that appellee should forfeit his fee, or part of it, because he did not see fit to sue a dying woman and send a process server to her bedside.

I think the judgment should have been affirmed.